# Exhibit 1

## Page 1

```
IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF DELAWARE


CHERVON (HK) LIMITED,  )
et al.,                )
                       )
        Plaintiffs,    )  C.A. No. 19-1293 LPS
                       )
v.                     )
                       )
ONE WORLD TECHNOLOGIES,)
INC., et al.,          )
                       )
        Defendants.    )


                Thursday, May 27, 2021
                2:00 p.m.


                844 King Street
                Wilmington, Delaware


BEFORE:  THE HONORABLE SHERRY R. FALLON
         United States District Court Judge


APPEARANCES:

        GREENBERG TRAURIG
        BY:  BENJAMIN J. SCHLADWEILER, ESQ.
        BY:  MATTHEW S. LEVINSTEIN, ESQ.
        BY:  JAMES J. LUKAS, ESQ.

                      Counsel for the Plaintiff
```

## Page 2

```
 1  APPEARANCES CONTINUED:

 2
    DLA PIPER LLP
 3  BY:  BRIAN A. BIGGS, ESQ.
    BY:  DAMON M. LEWIS, ESQ.
 4  BY:  SEAN C. CUNNINGHAM, ESQ.

 5           Counsel for the Defendant
```

## Page 3

1  THE COURT: Good afternoon. This
2  is Magistrate Judge Sherry Fallon joining the
3  discovery dispute teleconference this afternoon
4  in Chervon, Ltd., et al., versus One World
5  Technologies, et al. Let me first make a record
6  who is appearing on the call. I believe we have
7  Ms. Stacy Ingram, our court stenographer, is
8  that correct.
9  COURT REPORTER: Yes, Your Honor.
10  I'm here.
11  THE COURT: All right. Very good.
12  And also my law clerk Ms. Polito has joined.
13  Let's start with appearances of counsel now,
14  starting with counsel for the plaintiffs,
15  Delaware counsel.
16  MR. SCHLADWEILER: Good afternoon,
17  Your Honor. This is Ben Schladweiler from
18  Greenberg Traurig on behalf of plaintiff
19  Chervon. I'm joined with today by James Lukas
20  and Matthew Levinstein, both from our Chicago
21  office.
22  THE COURT: All right. Thank you,
23  everyone. And the same on the defense side.
24  MR. BIGGS: Good afternoon, Your

## Page 4

1  Honor. This is Brian Biggs from DLA Piper on
2  behalf of defendants. With me on the line are
3  my colleagues, Sean Cunningham and Damon Lewis,
4  also of DLA Piper.
5  THE COURT: Good afternoon. All
6  right. There's a number of issues that we need
7  to address this afternoon. Hopefully the
8  parties will let me know if any have since been
9  resolved, and if not, we'll address them all.
10  I'd like to begin with document
11  item number 207, which is the moving submission
12  from Chervon relating to the alleged discovery
13  misconduct arising from the e-mail production
14  made by defendants One World.
15  MR. LEVINSTEIN: Yes, Your Honor.
16  This is Matthew Levinstein for Chervon. I'll be
17  presenting argument on this. May I begin?
18  THE COURT: Please begin.
19  MR. LEVINSTEIN: Thank you, Your
20  Honor. So the relief that Chervon is requesting
21  here is pretty simple and straightforward. And
22  I know Your Honor is familiar with the briefs,
23  so I will do my best to get through this quickly
24  because I know we have a lot of issues to get

13

1  You know, we understand, 60,000 pages of e-mail
2  is not an insignificant production and we're not
3  saying that it is, but without knowing what
4  that's relevant to, compared to Chervon's
5  original e-mail search strings, we don't have
6  complete information.  And again, that's
7  information that One World has that they are not
8  willing to share with us or with the Court.
9            Next, One World claims in their
10 brief -- and I'm quoting here -- that, quote, no
11 misrepresentations were made to either the Court
12 or plaintiffs at the January hearing, end
13 quotes.  That is simply not true.  Those
14 misrepresentations might not have been made
15 intentionally or knowingly.  I don't know.  I
16 don't think anyone knows at this point, but it's
17 clear the misrepresentations were made and we
18 need an explanation.
19            And finally, Your Honor, for One
20 World to claim that Chervon is seeking to punish
21 One World for compliance with the Court's order
22 at the January 7th hearing is, and pardon my
23 language, but this is offensive.  One World owes
24 to this Court and to Chervon a duty of candor,

14

1  but they haven't come to the Court with patent
2  hands or with a meia culpa or any type of
3  apology.  They doubled down.  One World says
4  we've complied, we've complied with the Court's
5  order, plaintiffs are the cause of the delay,
6  plaintiffs aren't playing by the rules,
7  plaintiffs haven't produced responsive e-mails
8  they say.  I'm quoting here from docket entry
9  112.  This is from defendant's brief.  They say,
10 simply put, defendant's completion of document
11 discovery as ordered by the Court is not a basis
12 for discovery sanctions.  Your Honor, plainly
13 that is a reading of what has transpired here
14 that is inconsistent with the facts.  And I'm
15 sorry if I've gotten too heated here, it's just
16 been a lot of months of this, of us saying they
17 haven't done their -- you know, produced e-mails
18 and One World telling us that they have and it
19 just feels like, you know, to finally be
20 vindicated to know that they've been holding out
21 on us is a tough pill to swallow.  So with that,
22 I apologize for going on, but I'm through, Your
23 Honor.
24            THE COURT:  All right.  Let me

15

1  hear from One World on this.  And obviously I'm
2  interested in One World's addressing the issues
3  that were raised by counsel.
4            MR. BIGGS:  Certainly, Your Honor.
5  This is Brian Biggs from DLA Piper on behalf of
6  the defendants.  At the outset I would just
7  first frame all of the issues that we're going
8  to be dealing with, both on the letter filed by
9  Chervon, but also the letter filed by One World
10 related to e-mail, that One World's goal here is
11 to move the ball forward, to complete discovery,
12 right, to move forward with e-mail discovery, to
13 find the solution to getting the complete record
14 that the parties have requested and not move
15 regressively.  And what we're seeing between the
16 two letters is that One World's letter is
17 seeking to move forward while Chervon's letter
18 is seeking to move it backwards.
19            And let me start with what I think
20 are the most -- salacious is probably not a word
21 I'd like to use if I don't have to, but I think
22 I do here, related to litigation misconduct.
23 That is simply not the case here, Your Honor.
24 We provided the explanation that Chervon has

16

1  requested.  When we saw the red flags, Chervon
2  claims we did not see red flags.  When we saw
3  all the red flags, as we've identified both to
4  Chervon and in the briefing, we went back and
5  investigated and then we remedied the problem.
6  I went back -- after receiving their letter, I
7  went back to the letter briefing that Chervon
8  cites and the hearing transcript that Chervon
9  sites, because I was the one who was writing
10 many of those and I was the one that was
11 speaking at that hearing.  I take their
12 allegations very seriously and I wanted to make
13 sure that I had not, in fact, misrepresented
14 anything to the Court or to counsel.  When I
15 went back, I did not see a single
16 misrepresentation that, as Mr. Levinstein
17 claims, requires a mea culpa or some sort of
18 correction of the record.
19            And let me provide some context
20 for that, Your Honor.  That January 7, 2021
21 hearing was not about e-mail discovery as the
22 parties presented it in their briefing.  It was
23 about categories of documents that Chervon
24 claimed defendants had not yet produced.  When

17

we got through the briefing and when we got to the hearing, it became clear to everyone, including to the Court, that the parties did not have a meeting of the minds on the e-mail protocol. Defendants, One World, thought that that protocol had been resolved, right, that production had been complete, we were waiting for Chervon's production at the time, they did not produce anything for several months later, but we saw that the parties were still in the process of e-mail production. It was during that hearing that it became clear that Chervon did not agree. So at the Court's direction, the parties went back and met and conferred regarding e-mail. But let me be very clear that at the time during that January 2021 hearing, the representations that we made that the e-mail protocol had been complied with, that we were not withholding any relevant communications, that was all true. It was during the process that Your Honor suggested the parties conduct, to go back and discuss e-mail, discuss the contours of e-mail discovery and to agree on a path forward that we recognized that there were

18

some red flags with the way that the e-mail discovery had been conducted on our side.

And let me explain a little bit more about that because we provided this information to Chervon and we were willing to engage to discuss further, but we did not have a chance to do that before this hearing. In addition -- sorry, strike that. So going back to the explanation that we provided previously, we had used an objectively reasonable approach to conducting e-mail discovery in the first instance. All right. Our client is a sophisticated litigant. They have in house and e-discovery experts and sophisticated searching tools to use in their systems. Working with in house counsel and outside counsel we conducted those searches internally. It was after, as this e-mail issue was coming to a head, that we realized that perhaps there were some issues. We went to investigate. That investigation took some time. And frankly, Your Honor, several months later through several interviews, including interviews that I personally conducted, its -- I still cannot pinpoint what

19

issue occurred, right, whether it was syntax, whether it was search strings, it is not clear, but it was not for lack of trying and it's not because of some sort of objectively unreasonable approach that the defendants took here. But what we did, all right, what DLA Piper, what One World decided to do, because we couldn't pinpoint the issue back in January, we decided let's get rid of the potential issue with the in house systems. Again, in house systems that are used by our client in several other cases to conduct e-discovery and again, a comprehensive way. So we took all that in house, we made sure that we're using DLA Piper's e-discovery experts, using DLA Piper's more robust search tool and we remedied the situation and we remedied it as of March, right. We're talking two months later we provided hit counts, we told them we were willing to engage in how to move forward and produce the e-mails that they were requesting. And in fact, two months later we have now produced those e-mails in an effort to move the ball forward.

And so that helps frame, I think,

20

what exactly we are talking about today, right? Chervon has requested e-mails, we have now today produced those e-mails that based on the search terms that we think are reasonable, we asked Chervon whether they would like to engage on the search terms that we proposed, the ones that we thought were actually hitting meaningful hits. We complied with the e-mail agreement that the parties reached after that January hearing. And instead of engaging us on those search terms and moving discovery forward, Chervon has continued to try to take a step back, try to be regressive, to go back to the earlier search terms and try to rehash the technical issues that One World had with the initial collection of production. Issues again that we have remedied, we remedied as of March and we felt would reserve the issue, because again, no prejudice to Chervon.

So the two requests that Chervon has made today, one of them relates to an explanation. Your Honor, I'm not entirely certain what more of an explanation they need beyond what we provided them, what we offered to

21

1  provide during the meet and confer that Chervon
2  never took us up on and then we provided in the
3  letters. If there's something more that Chervon
4  would like to know, we'd be happy to have that
5  conversation. It would be nice if we did it
6  before we were having the conversation in front
7  of Your Honor and not tying up Court resources.
8      The request for sanctions, I'm not
9  entirely sure, again, how Chervon can say -- how
10 Chervon can seek sanctions, when again, we've
11 already cured the problem. Right. The problem
12 was an under representative number of e-mail
13 hits on the prior collection method. We cured
14 that, we cured that as of March and are ready to
15 move forward and Chervon is still asking for
16 sanctions going back to that prior period.
17 Chervon, as part of that request, if I
18 understood Mr. Levinstein's comments, they claim
19 they may not even need to show prejudice. I
20 think that is contrary to law, Your Honor. I
21 think that is an issue that's contrary to law.
22 And, in fact, I think it would be impossible for
23 them to even show it at this point, because
24 again, the efforts that One World and DLA Piper

22

1  together made to remedy the situation before we
2  ever got to depositions. I can't think of a
3  case that I have been involved in, Your Honor,
4  where sanctions were necessary when the document
5  production was remedied before we ever got to
6  depositions.
7      Now, the hit counts is a separate
8  question. And frankly, because, again, the goal
9  of the parties' agreement was to move the ball
10 forward, that's something that I think had,
11 again, we been able to have some of the these
12 conversations before we were on the phone with
13 Your Honor today, we could have potentially
14 resolved.
15     If I may go back to the parties'
16 agreement to the parties' agreement after that
17 January 7th, 2021 hearing, this is exhibit 1 to
18 One World's May 24 letter. What the parties
19 agreed to was to identify the relevant
20 custodians. Both sides did that. Two, the
21 parties would re-run the search terms with
22 proposed modifications, so it was contemplated
23 in the parties' agreement that we weren't going
24 to provide hit counts for what both parties

23

1  understood at the time would be overbroad search
2  terms. For instance, one good example of how
3  the overbreadth issue plays here -- and this is
4  actually something Mr. Levinstein mentioned
5  during his comments as well. If you look at
6  exhibit 1 to One World's May 25 letter, that's
7  the responsive letter regarding this particular
8  issue. One of the search terms that Chervon
9  provided related to -- the term was mower end, a
10 number of other search terms. So any e-mail
11 that hit on the word mower. And if you look at
12 terms 1 and 5, which are exhibits A and B to our
13 May 25 letter, the term is mower and then it has
14 33 independent terms, any one of which, if it's
15 used in the same e-mail as the word mower, it's
16 going to return a hit to that term, to those two
17 terms. That included some pretty generic terms
18 including the one that Mr. Levinstein stated
19 earlier, pat with the asterisk, P-A-T with the
20 asterisk meaning any word that starts with the
21 letters P-A-T. I understand that was to get to
22 the word patent, but that's also going to hit on
23 words Patrick or Patricia or any word that
24 starts with P-A-T. So the problem that we ran

24

1  into when we were running those initial search
2  terms -- and this was again after DLA Piper took
3  the PSTs for the custodians and were using the
4  more robust search tool. The problem that we
5  ran into, and this is something we explained to
6  Chervon's counsel, one of the custodians was the
7  senior director of mowers, so the word mower was
8  in his signature block, so that means that any
9  time this gentleman would send an e-mail that
10 would hit on any of those other 33 independent
11 terms, that that would be hit. And so you take
12 that, and you take the fact that one of the
13 other custodians is a Mr. Drew Patrick and you
14 have that mower end P-A-T with the wild card,
15 we're going to get a severely over
16 representative sample of hits in response to
17 that search term. So what the parties
18 contemplated in their agreement, which again,
19 was memorialized in exhibit 1 to our letter, was
20 to, to provide the hit counts only after the
21 proposed modifications. After the parties
22 provided the hit counts to the proposed
23 modifications, the parties then met and
24 conferred, discuss the results and then the

33

1 rectified by using, in conjunction with outside
2 counsel, an e-discovery specialist, a more
3 robust search tool. One World also represents
4 that it modified the search terms to provide,
5 quote unquote, meaningful hits.
6         Chervon's motion to compel seeks
7 an explanation from One World accounting for the
8 vast discrepancy in the e-mail production and
9 leave to move for sanctions for the alleged lack
10 of compliance with One World's discovery
11 obligations under rule 37. The discovery rules
12 and the case authorities interpreting them leave
13 no dispute that a party has a duty to fully
14 cooperate with its discovery obligations for
15 purposes of rule 37A(4), an evasive or
16 incomplete disclosure, answer or response must
17 be treated as a failure to disclose, answer or
18 respond. And I'll refer also to a case
19 citation, Eon Corp, IP Holdings versus Flow TV
20 and Tulip Computers International versus Dell.
21         The Court does not subscribe to
22 the view that as long as the requesting party
23 eventually gets the discovery requested, the
24 conduct of the producing party which precedes it

34

1 is irrelevant. Here, the Court finds a
2 sufficient gap in the magnitude between the
3 initial and subsequent production of e-mails to
4 reasonably call into question whether One World
5 is in compliance with its obligation under rule
6 37. The Court requires an explanation of this
7 disparity to determine whether it is the result
8 of harmless inadvertence or lack of a good faith
9 search.
10         Therefore, the Court grants in
11 part Chervon's motion to compel as follows. On
12 or before June 4, One World shall provide to
13 Chervon hit counts on Chervon's original e-mail
14 search strings as listed in its form of proposed
15 order at DI 207-2 at paragraph 2. That's the
16 order attached to Chervon's moving submission.
17 On or before June 4, One World shall provide to
18 Chervon a declaration addressing the factually
19 detailed basis for the large disparity between
20 the e-mail production, the explanation for the
21 delay in recognizing a deficiency in the first
22 e-mail production, a factually detailed
23 description of the, quote, technical limitation
24 in its prior search, which it rectified by using

35

1 a more robust search tool, end quote, and the
2 detailed facts underlying the process it
3 implemented to modify the terms to provide
4 meaningful hits.
5         While this order does not compel
6 disclosure of privileged information, the Court
7 expects that One World will not unreasonably
8 assert claims of privilege to frustrate or
9 obstruct the purpose of the declaration.
10         Then on or before June 11, should
11 a reasonable basis exist, Chervon has leave to
12 move for sanctions under rule 37 in accordance
13 with the Court's discovery dispute procedures
14 for requesting a hearing date via a joint motion
15 and subject to the page limitations for letter
16 briefing which govern discovery disputes. And I
17 fully expect that prior to doing that and moving
18 ahead with a sanctions motion, that that would
19 be carefully reviewed by Chervon, that there
20 would be a meet and confer between the parties
21 if the declaration I've ordered to be supplied
22 leaves any question about whether this is, as I
23 said, harmless inadvertence or lack of a good
24 faith search. And then if Chervon believes

36

1 reasonably that there's a basis for moving
2 ahead, it has leave to file a rule 37 motion,
3 but I prefer it to be briefed in accordance with
4 my standard discovery dispute procedures. I'm
5 not going to authorize at this time, you know,
6 the 20 page, 20 page, 10 page or whatever
7 briefing under the local rules. So that is my
8 order with respect to this issue.
9         At this time I would like to stay
10 with the issues raised by the plaintiffs and
11 move on next to the motion to compel complete
12 sales, finance, marketing and advertising
13 related production from One World. First, let
14 me ask, who will be addressing that on behalf of
15 Chervon, because we've already spent quite a bit
16 of time on this call with respect to the e-mail
17 issue and I think I can move this issue along a
18 bit more quickly if I find out who is addressing
19 it and ask my questions at the outset.
20         MR. LEVINSTEIN: Thank you, Your
21 Honor, this is Matthew Levinstein for Chervon.
22 I will be addressing these issues.
23         THE COURT: All right. So Mr.
24 Levinstein, you've obviously read Chervon's --