

DLA Piper LLP (US)
Brian Biggs
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

V<span>IA</span> CM/ECF

August 13, 2021

The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Unit 14, Room 6100
Wilmington, DE 19801

    Re:    *Chervon (HK) Limited v. One World Techs, Inc.*, **C.A. No. 19-1293-LPS**

Dear Magistrate Judge Fallon:

    Defendants respectfully respond to Plaintiffs' August 6, 2021 letter brief requesting Rule 37 sanctions (D.I. 227). Defendants' actions were reasonable under the circumstances, and their delayed production of emails was both substantially justified and not prejudicial to Plaintiffs, so sanctions are not warranted. Furthermore, Plaintiffs have not articulated any legal basis to justify an imposition of sanctions under Rule 37 or otherwise, and Plaintiffs' recitation of the facts is incorrect in several material respects. Plaintiffs' requested relief should therefore be denied.

**I.    FACTS**

    Defendants complied with their discovery obligations and the Court's orders. The Court ordered Defendants to explain the reasons why their email production was delayed, and granted Plaintiffs leave to file a Rule 37 motion if Defendants' explanation "leaves any question about whether this is … harmless inadvertence or lack of a good faith search." Ex. H, May 27, 2021 Tr. at 35:16-24. The Cunningham Declaration carefully explains the good faith and justifiable reasons why Defendants' production of emails was delayed. *See* Ex. A, Cunningham Decl.

    **A.    Defendants Searched For And Produced Emails But Encountered A Technical Problem With the Mailbox Files.**

    On April 22, 2020, Plaintiffs served their First Set of Email Requests. *See* Ex. A, Cunningham Decl. ¶ 4. Defendants thereafter diligently attempted to produce emails stored in the Microsoft Cloud using the Microsoft 365 Compliance Core eDiscovery tool. *Id.* ¶ 5. However, technical problems with that tool led Defendants and DLA Piper to conclude that certain mailbox files were corrupted and inaccessible. *Id.* ¶ 7. After several attempts to open the files using tools offered by Microsoft and Relativity, Defendants were able to partially open the mailboxes, but were only able to view a portion of the emails contained in those files. *Id.* ¶ 8. On October 15, 2020, Defendants produced the responsive, non-privileged emails that could be recovered. *Id.*

    On January 27, 2021, the parties entered a new email production protocol at the Court's urging. *Id.* ¶¶ 9-10. To facilitate production of emails under this new protocol, Defendants downloaded each custodian's entire mailbox from the Microsoft Cloud—a time-consuming task—to allow DLA Piper to load the data onto its own eDiscovery platform, Relativity. *Id.* ¶ 11.

After two weeks of work (including getting help from Microsoft), Defendants succeeded in downloading approximately 600 gigabytes of data onto a hard drive, which DLA Piper received on February 15, 2021. *Id.* at ¶ 12. Thereafter, DLA Piper eDiscovery specialists discovered that although Microsoft 365 had been unable to open the mailboxes stored in the Microsoft Cloud, DLA Piper's Relativity software tool was able to open those mailboxes when stored locally on DLA Piper's platform. *Id.* at ¶ 13. This was the first time anyone had been able to access the previously inaccessible email files. DLA Piper immediately began to process the emails under the January 2021 email protocol, which included modifying several of Plaintiffs' proposed search strings to return more meaningful results. Defendants disclosed these modified search strings to Plaintiffs on March 8, 2021. *Id.* at ¶ 14. Following a manual review for privilege, Defendants substantially completed their email production in mid-May 2021. *Id.*

Although not ideal, Defendants' delay in producing emails was substantially justified by the technical challenges they ultimately overcame. And contrary to Plaintiffs' statement that "discovery is closed" (Mot. at 4, fn. 7), fact discovery does not close until September 2, 2021, and no depositions have been scheduled or taken. Therefore, Plaintiffs will have had Defendants' email production for several months before Plaintiffs depose the relevant witnesses.

### B.   Plaintiffs' Recitation Of The Facts Is Wrong In Several Respects.

Plaintiffs claim the Court "ordered One World to revisit its email search." Mot. at 1. On the contrary, the Court ordered both parties to meet and confer "about the scope of the mutual agreement with respect to email searching and production." Ex. B, Jan. 7, 2021 Hr'g Tr. at 68:19-69:7. The resulting agreement, reached on January 27, 2021, required both parties to negotiate search terms. *See* Ex. C. Defendants adhered to that agreement, but Plaintiffs did not.

Plaintiffs also claim that "Counsel for One World chose to rely on One World's representation without any independent investigation in June 2020" (Mot. at 3), while also claiming without evidence that Defendants "withheld" responsive emails "under the guise of (untrue) file inaccessibility and corruptness." *Id.* at 1. Contrary to Plaintiffs' mischaracterization, the Cunningham Declaration explains that Defendants and DLA Piper continued to investigate the technical problems with accessing the relevant email files, and DLA Piper independently attempted to repair the corrupted files using the Microsoft ScanPST tool. Cunningham Decl. ¶ 7. The files remained inaccessible until DLA Piper was able to load the relevant mailboxes on its internal eDiscovery platform (Relativity), which allowed DLA Piper to access mailbox files that had been inaccessible up to that point. *Id.* ¶13.

### C.   Defendants Produced Their Responsive Emails More Than Two Months Before Plaintiffs Belatedly Produced Thousands Of Pages Of Emails.

Defendants completed their email production on May 17, 2021 without any Court order directing them to do so. In contrast, Plaintiffs produced thousands of pages of emails responsive to Defendants' searches on July 30, 2021—exactly 30 days after the Court-ordered deadline for Plaintiffs to complete their email production. *See* Ex. D, May 28, 2021 Order. To this day, it is not clear that Plaintiffs' email production is complete. *See* Ex. E. But again, no depositions have been scheduled or taken, and there is no indication when depositions will begin, particularly with the latest surge in COVID-19 cases globally.

Thus, it is simply not true that Plaintiffs have "spent a year chasing down these emails from One World." Mot. at 4. The only emails Plaintiffs claim are "missing" from Defendants'

production are emails between Defendants and The Home Depot. *See* Mot. at 2. But Plaintiffs first requested Home Depot-related emails on December 18, 2020 (*see* Ex. F), less than five months before Defendants completed their email production. But more important, Defendants did produce emails between Defendants and The Home Depot, including every email that hit the following search string: "*mower* w/10 ((copy* or compet* or infring* or patent) and (chervon or ego or echo or "home depot" or "thd"))." *See* Ex. G (emphasis added). Therefore, responsive Home Depot-related emails are not "missing" from Defendants' production.

## II.  ARGUMENT

Plaintiffs have failed to articulate any legal theory or standard by which the Court should resolve Plaintiffs' request for extraordinary relief. Mot. at 3. Even if Plaintiffs had articulated such a theory, the facts here do not warrant sanctions under any theory.

### A.  Rule 37 Sanctions Are Not Warranted Because Defendants Did Not Violate An Order To Provide Discovery, And They Remedied Their Production Of Emails Months Before The Close Of Fact Discovery.

Fed. R. Civ. P. 37(b)(2) permits a Court to impose sanctions where a party "fails to obey an order to provide or permit discovery … ." There was no such order here. On the contrary, the parties' December 14, 2020 Joint Motion (D.I. 126) does not even mention email. And at the January 7, 2021 hearing, the Court ordered both parties to meet and confer "about the scope of the mutual agreement with respect to email searching and production" (Ex. B, Jan. 7, 2021 Hr'g Tr. at 68:19-69:7), but the Court did not order Defendants to produce its emails by a date certain. Defendants complied with the order to meet and confer, and Defendants unilaterally produced their emails by May 17, 2021 after remedying the technical problem discussed above. Because Defendants did not "fail[] to obey an order to provide or permit discovery," sanctions under Rule 37(b)(2) are not available. *See also Hawk Mtn. LLC v. Mirra*, 2016 WL 3176567, at *2 (D. Del. June 3, 2016) ("Plaintiffs have failed to show that [Defendants] did not comply with a court order, as required to obtain sanctions pursuant to Rule 37(b).").[1]

In contrast to Defendants' proper conduct, Plaintiffs violated the Court's May 28 Order by failing to produce their responsive emails by the Court-ordered deadline of June 30, 2021. *See* Ex. D, May 28, 2021 Order; *see also* Ex. E. In a prior decision, this Court found it "difficult to grant plaintiffs' motion for sanctions pursuant to Rule 37 when plaintiffs themselves have failed to comply with the court's December 7, 2015 discovery order in that regard." *Hawk Mountain*, 2016 WL 3176567, at *2. The same is true here—although Rule 37(b)(2) sanctions may be warranted for Plaintiffs' violation of the Court's May 28 Order, they are not available as against Defendants.

Sanctions are not warranted under Rule 37(c)(1) either. That rule permits sanctions only if a party "fails to provide information or identify a witness … unless the failure was substantially justified or is harmless." Here, Defendants did not fail to produce their responsive

---

[1] These cases Plaintiffs cite (Mot. at fn. 3, 4, 5) do not apply here, because each case imposed sanctions only after a party violated a court order. *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692 (D.N.J. 2015); *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683 (3d Cir. 1988); *Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003); *In re Delta/Air Tran Baggage Free Antitrust Litig.*, 846 F. Supp. 2d 1335, 1353-57 (N.D. Ga. Feb. 3, 2012).

emails, and their delay in doing so is both substantially justified and harmless. *See* Ex. A, Cunningham Decl.; *see also Broadsoft Inc. v. Callwave Commc'ns LLC*, 2015 WL 3542547, at *2 (D. Del. June 1, 2015) (denying Rule 37 sanctions despite late supplementation of contentions); *3M Co. & 3M Innovative Props. Co. v. Kerr Corp.*, No. 17-1730-LPS (D. Del. Sept. 13, 2018), D.I. 63 (denying Rule 37 sanctions because request to compel was moot as party provided samples). As discussed above, the only emails Plaintiffs claim are "missing" are those with The Home Depot (Mot. at 2), which Defendants already produced. And Defendants' production delay until May 2021 was substantially justified by the technical obstacles they overcame and by the new email protocol the parties entered into in late January 2021. Indeed, Defendants shared hit counts for their supplemental email production less than three weeks after resolving the technical problems with the inaccessible email files. *See* Ex. A, Cunningham Decl. ¶ 13; Ex. G; *see also* Fed. R. Civ. P. 26(e)(1)(A) (supplemental production must occur "in a timely manner"). Finally, the production delay was harmless, because Defendants completed their email production at least four months before the close of fact discovery and before any depositions were scheduled or taken. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 243 (3d Cir. 2007) ("Production errors discovered at the pre-trial stage of litigation will result in little, if any, expense or prejudice to the opposing party.").

  **B.** **Sanctions Are Not Warranted Under 28 U.S.C. § 1927 Or The Court's Inherent Authority Either.**

  For the reasons demonstrated above, the Court should reject Plaintiffs' additional request for sanctions under 28 U.S.C. § 1927 or the Court's inherent authority. Section 1927 authorizes sanctions only "in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hospital*, 790 F.2d 342, 347 (3d Cir. 1986). Similarly, a court's inherent authority to impose sanctions arises where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Both standards require a showing of "willful bad faith." *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991); *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991). As demonstrated above and in the Cunningham Declaration, Defendants at all times acted in good faith and worked diligently to resolve the technical challenges with gaining access to their inaccessible email files. Although the delay in production was not ideal, Defendants' conduct in resolving these technical obstacles, producing responsive emails months before the close of fact discovery (and months before Plaintiffs belatedly produced their emails), and the lack of any violation of a Court order is nowhere close to the "willful bad faith" required for an imposition of sanctions.

  **C.** **The Court Should Deny Plaintiffs' Unauthorized Motion To Compel Emails Between The Home Depot And Defendants.**

  As demonstrated above, Defendants have already produced emails between Defendants and The Home Depot. But more fundamentally, Plaintiffs never raised this purported deficiency in Defendants' email production before filing this motion, including in any meet-and-confer, as required by Section 8(g)(ii) of the Scheduling Order. Had Plaintiffs followed the rules or reviewed Defendants' production, they would know those emails had already been produced. The Court should deny that portion of Plaintiffs' motion as well. Over the course of several months, Defendants repeatedly asked Plaintiffs to negotiate email search strings as required by the parties' January 27, 2021 agreement, but Plaintiffs refused to do so. Despite this, Defendants remain willing to run a limited number of additional search strings through its email custodians if Plaintiffs propose search strings designed to return meaningful results.

4

Respectfully submitted,

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)

cc: All Counsel of Record (via CM/ECF and email)

WEST\295727723.5