# EXHIBIT B

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -
    CHERVON (HK) LIMITED, CHERVON
 4  NORTH AMERICA, INC.,            :    CIVIL ACTION
                                    :
 5         Plaintiffs,              :
    v                               :
 6                                  :
    ONE WORLD TECHNOLOGIES, INC.,   :
 7  TECHTRONIC INDUSTRIES CO. LTD., :
    HOMELITE CONSUMER PRODUCTS INC.,:
 8                                  :    NO. 19-1293-LPS
          Defendants.
 9                            - - -

10                     Wilmington, Delaware
                     Thursday, January 7, 2021
11                     Telephone Conference

12                            - - -

13  BEFORE:   HONORABLE SHERRY R. FALLON, Magistrate Judge

14                            - - -
    APPEARANCES:
15

16         GREENBERG TRAURIG LLP
           BY:  BENJAMIN J. SCHLADWEILER, ESQ.
17
                and
18
           GREENBERG TRAURIG, LLP
19         BY:  JAMES J. LUKAS, JR., ESQ.,
                MATTHEW J. LEVINSTEIN, ESQ., and
20              BENJAMIN P. GILFORD, ESQ.
                (Chicago, Illinois)
21
                    Counsel for Plaintiffs Chervon (HK)
22                  Limited and Chervon North America, Inc.

23

24
                              Brian P. Gaffigan
25                            Official Court Reporter
```

2

```
 1   APPEARANCES:  (Continued)
 2
 3        DLA PIPER LLP (US)
          BY:  BRIAN A. BIGGS, ESQ.
 4
               and
 5
          DLA PIPER LLP (US)
 6        BY:  SEAN C. CUNNINGHAM, ESQ.
               ERIN P. GIBSON, ESQ.
 7        (San Diego, California)

               and
 8
          DLA PIPER LLP (US)
 9        BY:  DAMON M. LEWIS, ESQ.
          (Washington, District of Columbia)
10
                    Counsel for Defendants One World
11                  Technologies, Inc., Techtronic
                    Industries Co. Ltd., and Homelite
12                  Consumer Products Inc.
13
14
15
16
17
18
19
20
21
22                      - oOo -
23            P R O C E E D I N G S
24       (REPORTER'S NOTE:  The following telephone
25  conference was held remotely, beginning at 1:03 p.m.)
```

3

THE COURT: Good afternoon, everyone. This is Magistrate Judge Sherry Fallon joining the conference call in Chervon Limited versus One World Technologies, et al. This is the time set aside for a discovery dispute, and I do appreciate counsel adjusting the time to start this later this afternoon.

Let's start with appearances for the record. First, I need to confirm that I have a court stenographer on the line.

THE COURT REPORTER: Yes, Your Honor. This is Brian.

THE COURT: All right. Thank you, Mr. Gaffigan. Do I have my law clerk, Ms. Polito, on the line?

THE LAW CLERK: Yes, Your Honor. I'm on the line.

THE COURT: Thank you. All right. Then let's start with appearances on the counsel beginning with Delaware counsel, starting with the plaintiff, Chervon (HK) Limited.

MR. SCHLADWEILER: Good afternoon, Your Honor. This is Ben Schladweiler from Greenberg Traurig on behalf of the Chervon plaintiffs. I'm joined today by James Lukas and Matthew Levinstein, both from our Chicago office.

MR. LUKAS: Good morning, Your Honor.

THE COURT: Good morning, everyone.

4

MR. LEVINSTEIN: Good afternoon, Your Honor.

THE COURT: Yes, for me. Thank you.

All right. Okay. Let me just make notes of who is on the call.

All right. And now for the defendants, starting with Delaware counsel.

MR. BIGGS: Good afternoon, Your Honor. This is Brian Biggs from DLA Piper on behalf of the defendants. With me on the line are my colleagues also from DLA Piper, Sean Cunningham, Erin Gibson, and Damon Lewis.

MR. CUNNINGHAM: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. LEWIS: Good afternoon.

THE COURT: Good afternoon, everyone.

All right. I have read what amounts to I guess roughly 24 pages of arguments regarding a number of discovery disputes and literally hundreds of pages of exhibits that I received in a very short span of time from January 4th.

I can't represent to all of you that I have my arms around the exhibits in their entirety, so you can help me on this dispute in a number of ways.

First of all, I'm asking for succinct and direct argument specifically identifying what the moving party claims is sufficient about the other party's discovery

5

responses.

I'm trying to cut through much of the background information. I understand what the nature of this patent case is. I understand there is a large number of patents, the accused products, generally, very generally speaking involve lawnmowers.

I do have an understanding from reading the papers of much of the background and given the number of issues we have to get through this afternoon, it's not going to be helpful to have it proceed as if it were an oral argument on summary judgment.

Let's go directly to the issues, the alleged deficiencies and what each side has to say about them. We'll go issue by issue. I'll go in the chronology that the briefs were filed, so we'll start with the defendant One World's issues, vis-à-vis the plaintiffs first.

And we'll go issue by issue within that moving submission. So we'll start, in other words, with Interrogatory No. 8 and the alleged deficiencies in the response and then when that is resolved; we'll move on to Interrogatory Nos. 13 and 14, attempt to resolve those, et cetera. And we'll proceed in the same fashion with respect to plaintiffs' issues.

And then at the conclusion of our conference

1  apologize if I was unclear in my prior recitation of the way
2  we conducted the discovery, because the way we conducted the
3  investigation based on the RFPs was independent of the email
4  protocol.
5          So when we went and asked the custodians for
6  documents, it was not, hey, only tell me about non-email
7  documents.  It was what documents do you have that relate to
8  this.
9          What I was suggesting was that, what the parties
10 had agreed to so that we don't have to go through exhaustive
11 email discovery was to agree to certain parameters.  So when
12 we conducted the search under the RFPs it was not limited to
13 only non-emails, it was more so that the comment was to
14 reflect that to the extent they're seeking emails specifically
15 beyond what, you know, the general RFPs are requesting, that
16 is covered by the RFP or the email agreement.  So I didn't
17 want to mislead the Court, suggest that we intentionally
18 excluded emails from our initial searching.
19         And one other point that I would note, Your
20 Honor, is that -- and I allow plaintiffs to please correct
21 me if I'm wrong about this, but -- sorry.  Please correct me
22 if I'm wrong about this, but I don't believe Chervon has
23 produced a single email yet.
24         Now, we have not propounded email requests on
25 them yet, and so that might be why.  But if what they're

1  suggesting is that we should have conducted a large fulsome
2  investigation into all the emails of all the folks at One
3  World beyond the custodians we interviewed, that is not what
4  Chervon has done with their production either.
5          So I thought that those two points of context
6  might be helpful for Your Honor.
7          MR. LEVINSTEIN:  Your Honor, this is Matt
8  Levinstein.  May I respond to that?
9          THE COURT:  Go ahead.
10         MR. LEVINSTEIN:  I am now very confused.  As to
11 the scope of One World production, and I want to be very
12 clear with the Court about what it is that we sought.  We
13 explained our interpretation of the stipulated email
14 requests that we had agreed to with the other party.
15         But our document requests also covers ESI, as
16 they should.  It explicitly includes emails.  And I don't
17 believe that defendants objected to any of our RFPs on the
18 basis that we were seeking emails and we have a separate
19 full, the total email production stipulation that governs
20 every single email produced in the case.
21         So I think I agree with Your Honor that what
22 we need to do is we need to sit down.  The parties need to
23 sit down and figure out what is the overall scope of email
24 production, because, again, understanding now that they
25 haven't even searched for email responses or maybe they

1  searched for email responsive to RFPs, maybe they haven't,
2  I'm still not 100 percent sure, how is it possible that
3  there is not a single email?  Maybe they produced one.  How
4  is there only one email between defendants and the Home
5  Depot, their exclusive retailer for accused products at
6  issue here?
7          So I guess my mind is spinning a little bit, and
8  I do think the parties need to get together on this.
9          THE COURT:  All right.  I think that is a
10 necessity because I don't know how I can resolve these,
11 and despite my ruling on the record about not being
12 comfortable ordering production based on the absence of a
13 larger production, there are certain bullet points here that
14 do cause the Court to question just what the scope of the
15 search was, how thorough it was, if there was some reliance
16 upon an agreement for the email protocol and number of
17 custodians that made the search narrower than it perhaps
18 should have been.
19         I'm not saying that anything intentional or
20 nefarious was committed, but I'm just saying that the
21 parties may just be operating on different pages, on
22 different levels with respect to what the mutual
23 understanding is of the production obligations here.
24         So I think it would be helpful that I defer
25 ruling on these bullet points without prejudice for the

1  parties to meet and confer about a number of things about
2  these nine bullet points, about the scope of the mutual
3  agreement with respect to email searching and production and
4  also with respect to privilege logs as we have discussed
5  previously.  And then depending on the outcome of that, the
6  Court will permit plaintiffs to raise issues that I deferred
7  on this case.
8          Now, I'm not going to promise to do that on the
9  28th because I want to give the parties some instructions
10 about what we will be accomplishing at the next discovery
11 dispute hearing on January 28th in a moment, but I do think
12 that the parties need to meet and confer on these points and
13 do that very promptly as soon as both sides are available to
14 do that and well before I hear the next round of issues on
15 the 28th.
16         So let me just ask, I'll ask Mr. Levinstein
17 first and then Mr. Biggs may weigh in.
18         With respect to the last item that was briefed
19 with respect to the discovery dispute on plaintiffs' motion
20 to compel, the identification of "meet each noninfringing
21 alternative," is that something that is captured by what
22 we've just been discussing on these nine bullet points or is
23 that independent of it?  And can we address that last issue
24 raised by plaintiffs on this call?
25         Let me hear first from Mr. Levinstein.