**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CHERVON (HK) LIMITED, | ) | |
| CHERVON NORTH AMERICA, INC. | ) | |
| | ) | |
| *Plaintiffs*, | ) | C.A. No. 19-1293-LPS |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ONE WORLD TECHNOLOGIES, INC., | ) | |
| TECHTRONIC INDUSTRIES CO. LTD., | ) | |
| HOMELITE CONSUMER PRODUCTS | ) | |
| INC., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF JAMES MALACKOWSKI IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO DEFENDANTS' MOTION FOR**
**DISQUALIFICATION OF JAMES MALACKOWSKI**

I, James Malackowski declare as follows:

1.      I am a Co-founder and Senior Managing Director of Ocean Tomo, LLC.  Ocean Tomo is a leading supplier of expert opinion, management consulting, advisory, and specialty services focused on matters involving intellectual property and other intangible assets.  On hundreds of occasions, I have served as a damages expert relating to intellectual property economics including the subject of valuation, reasonable royalty, lost profits, price erosion, commercial success, and other topics.

2.      The law firm Greenberg Traurig, LLP, has retained me as a substitute damages expert for Plaintiffs Chervon (HK) Limited and Chervon North America, Inc. (collectively, "Chervon") in the above-captioned matter.  I have personal knowledge of the facts set forth herein.  I respectfully submit this Declaration in support of Chervon's Opposition to Defendants' Motion for Disqualification ("Motion").

3.      Chervon's current damages expert, Michael Milani, is a colleague of mine at Ocean Tomo.  Mr. Milani is unable to continue his work for Chervon on this case in view of an ongoing medical issue.  I have agreed to adopt all of Mr. Milani's opinions in his opening and reply reports.  I intend to update only the name on the reports, the personal background sections, and the CVs attached as exhibits.  Other than that, I will not change Mr. Milani's opinions, add new opinions, or delete opinions.  I have known Mr. Milani professionally for over 20 years, we have worked together on many cases, and I know and appreciate the extremely high standards that Mr. Milani applies to his work.  It is my professional pleasure to take over for Mr. Milani and stand behind his and Ocean Tomo's opinions.

4.      I have reviewed a redacted version of Mr. Stockhausen's Declaration submitted in support of Defendants' One World Technologies, Inc., Techtronic Industries Co. Ltd., and Homelite Consumer Products, Inc.'s (collectively, "Defendants'") Motion.

5.      I agree with Mr. Stockhausen that I was retained by the plaintiffs to provide damages opinions in the two cases from 2014 that he refers to as the "Snap-On case" and "Milwaukee-TTi case." (Stockhausen Declaration, ¶¶ 5-7.)

6.      Even if it is accurate that I received confidential documents in the Milwaukee-TTi case and/or the Snap-On case (*id.*, ¶ 10), (i) I do not recall receiving any documents or information from that case, including any specific documents or information that Mr. Stockhausen contends are confidential in paragraph 10 of his declaration; (ii) I do not recall the contents of any documents or information from that case, including any specific documents or information that Mr. Stockhausen contends are confidential in paragraph 10 of his declaration; and (iii) I do not have in my possession any documents or information from that case, including any specific documents or information that Mr. Stockhausen contends are confidential in paragraph 10 of his declaration.

7.      Mr. Stockhausen also states that we discussed "Plaintiffs' damages theories, prior licenses, and licensing strategy" and prepared for my deposition and trial in the Snap-On case.  (*Id.*, ¶ 7.)

8.      Even if it is accurate that Mr. Stockhausen discussed "Plaintiffs' damages theories, prior licenses, and licensing strategy" with me, and prepared me for my deposition and trial in the Snap-On case, I do not recall any discussions, meetings, or preparation sessions with Mr. Stockhausen from the Snap-On case or the Milwaukee-TTi case, including any discussions, meetings, or preparation sessions during which Mr. Stockhausen contends we discussed "Plaintiffs' damages theories, prior licenses, and licensing strategy" and prepared for my deposition and trial.

9.      Mr. Stockhausen also states that I met with Elizabeth Miller, Keith Van Arsdale, Nick Wendorff, Bob Gautsch, Kenneth Eaton, Sean Dougherty, and Jeff Cutler as part of the Milwaukee-TTi case and Snap-On case and that I learned the following from these individuals:

> (a) TTi's licensing strategy, including key decision points such as what TTi considers important in licensing negotiations, how TTi values and evaluates licensing options, what forms of licensing TTi prefers and why, and how one license can impact potential licensing with other parties for the same or similar technologies; (b) TTi's market and business strategies, including key factors regarding how TTi approaches and evaluates technology development and product-line growth; (c) TTi's proprietary intelligence on **[REDACTED]** (d) TTi's licensing history and its interest in, and willingness to, negotiate and enter into licensing agreements; and (e) TTi's approach to patent litigation, including its methods of valuing litigation and settlement options.

(*Id.*, ¶¶ 8, 9.)

10.     Even if it is accurate that I met with Elizabeth Miller, Keith Van Arsdale, Nick Wendorff, Bob Gautsch, Kenneth Eaton, Sean Dougherty, and Jeff Cutler as part of the Milwaukee-TTi case and Snap-On case, I do not recall any discussions or meetings with these individuals, including any discussions or meetings during which Mr. Stockhausen contends we discussed the topics listed in paragraph 9 of his declaration. I certainly do not, and cannot, recall any of this subject matter now.

11.     Mr. Stockhausen also states that I received "unfiltered thoughts and impressions of counsel regarding TTi's litigation strategies, evaluation of damages, and considerations in potential settlement," "guidance as to the ongoing litigations," "context for the information from TTi's executives regarding TTi's licensing strategy," and/or "TTi's trial strategy and counsel's assessments of the strengths and weaknesses of different approaches to a patent infringement damages case" as part of my deposition and trial strategy preparation sessions with him. (*Id.*, ¶ 12.)

12.     Even if it is accurate that I participated in deposition and trial strategy preparation sessions with Mr. Stockhausen, I do not recall any deposition and trial strategy preparation sessions, including any deposition and trial strategy preparation sessions during which Mr. Stockhausen contends we discussed the topics listed in paragraph 12 of his declaration. I certainly do not, and cannot, recall any of this subject matter now.

3

13.     The Milwaukee-TTi case and the Snap-On case were filed approximately nine years ago.  Since my work on the Milwaukee-TTi case and the Snap-On case ended approximately six years ago in 2017, I have not seen, reviewed, or discussed any documents or information from those cases, including any specific documents or information that Mr. Stockhausen contends are confidential.  I do not have possession of any documents or information relating to the Milwaukee-TTi case or the Snap-On case, let alone any specific documents or information that Mr. Stockhausen contends are confidential.

14.     To the extent I submitted an expert report, sat for a deposition, or testified at trial in the Milwaukee-TTi case and the Snap-On case, I do not have in my possession a copy of my expert report(s), deposition transcript(s), and/or trial transcript(s) from those cases.

15.     I do not have in my possession any hard copy or electronic documents, emails, notes, or other information relating to the Snap-On case and the Milwaukee-TTi case, and I do not recall anything confidential or privileged about those cases.

16.     Since my work on the Milwaukee-TTi case and the Snap-On case ended approximately six years ago in 2017, I have not had any contact with Mr. Stockhausen or any other attorneys for the plaintiffs in the Milwaukee-TTi case and the Snap-On case and any employees of the plaintiffs in the Milwaukee-TTi case and the Snap-On case, regarding those cases.

17.     I have not disclosed any documents or information that were designated CONFIDENTIAL under the protective order in the Milwaukee-TTi case.  I do not have in my possession any documents or information that were designated CONFIDENTIAL under the protective order in the Milwaukee-TTi case.  I do not have in my possession any notes relating to documents or information that were designated CONFIDENTIAL under the protective order in the Milwaukee-TTi case.  I do not recall any documents or information that were designated CONFIDENTIAL under the protective order in the Milwaukee-TTi case.  Accordingly, I cannot disclose any documents or

information that were designated CONFIDENTIAL under the protective order Milwaukee-TTi case in the future.

18.     I have been retained more than 100 times as a damages expert since I completed my work on the Milwaukee-TTi case and the Snap-On case in 2017.  Once a case is over, my ability to recall my opinions, analyses, and underlying case facts and documents recedes fairly quickly as I replace them with the opinions, analyses, and information relevant to my new matters.

19.     I have never been retained by One World Technologies, Inc.

I declare under penalty of perjury under the laws of the State of Delaware that the foregoing is true and correct.

Dated this 13th day of November, 2023

_____
James Malackowski