# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHERVON (HK) LTD., CHERVON NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ONE WORLD TECHNOLOGIES, INC., TECHTRONIC INDUSTRIES CO. LTD., HOMELITE CONSUMER PRODUCTS, INC.,<br><br>Defendants. | C.A. No. 19-1293-GBW |

## MEMORANDUM ORDER

Plaintiffs Chervon (HK) Ltd. ("Chervon HK") and Chervon North America, Inc. ("Chervon NA") (collectively, "Chervon" or "Plaintiffs") filed their Second Amended Complaint (D.I. 45) against Defendants One World Technologies, Inc., Techtronic Industries Co. Ltd., and Homelite Consumer Products, Inc. (collectively, "One World" or "Defendants") alleging "infringement of nine patents relating to technology [purportedly] embodied by [Chervon's] EGO brand of lawn mowers." D.I. 45 ¶ 1.

Pending before the Court is Plaintiffs' Motion to Amend their Damages Contentions and Response to Defendants' Interrogatory No. 15 and to Supplement their Document Production (D.I. 477) ("Chervon's Motion"), which has been fully briefed (D.I. 478; D.I. 500; D.I. 506).[1] For the following reasons, the Court denies Chervon's Motion.

---

[1] Chervon's Motion was filed on January 27, 2025. *Cf.* Court's Revised Administrative Procedures Governing Filing and Service by Electronic Means § (F). The Court set an expedited briefing schedule, because a pretrial conference in this case is set for February 4, 2025. *See* D.I. 482.

## I.  BACKGROUND

Plaintiffs "move for leave to amend their damages contentions and response to Defendants' Interrogatory No. 15, and to supplement their document production." D.I. 477 at 1. Specifically, Plaintiffs seek to (1) amend a discovery response to "explicitly recite lost platform sales" and (2) "supplement their document production to add" the "bates-stamped documents CHERVON 0250672 and CHERVON 0250665." D.I. 478 at 1, 1 n.1.[2]

Chervon's Motion was filed "[i]n light of the Court's January 1[4], 2025, Memorandum Order." D.I. 478 at 1. On January 14, 2025, "the Court [] str[uck] Plaintiffs' lost platform sales damages theory." D.I. 472 at 15 n.3; *see id.* at 24 ¶ 1 ("The Court strikes ... all references in Mr. McSorley's expert reports to (1) Plaintiffs' lost platform sales damages theory .... The parties and their experts shall not raise the content of any stricken material at any point during the trial."). Below the Court summarizes facts and findings from its January 14, 2025 Memorandum Order (D.I. 472) that are relevant to Chervon's Motion.

### A.  Chervon's Damages Contentions

On March 9, 2020,[3] this Court entered a Scheduling Order requiring Plaintiffs to make their Rule 26(a)(1) disclosures by January 17, 2020. D.I. 37 at 1. In addition to the Rule 26(a)(1) disclosures, the Court ordered Plaintiffs to disclose (by the same day) *inter alia* Plaintiffs' "damages model." D.I. 37 at 3. On January 17, 2020, Plaintiffs submitted their Rule 26(a) Initial Disclosures, Initial Identification of Accused Products, and Damages Model. D.I. 398-1. Therein, Plaintiffs stated:

---

[2] Chervon refers to these documents as the "Material."

[3] While the Court entered the Scheduling Order on March 9, 2020, the Court did not docket the Scheduling Order until March 11, 2020. D.I. 37.

2

> In accordance with Federal Rule of Civil Procedure 26 and the parties' Proposed Scheduling Order, at present, Chervon discloses that it is seeking lost profit damages for patent infringement under 35 U.S.C. § 284, enhanced damages for willful infringement, costs, and interest. More specifically, Chervon is seeking damages adequate to compensate for defendant's infringement including lost profit damages and/or damages that are not less than a reasonable royalty; damages for Chervon's costs, disbursements, and attorneys' fees; damages for an exceptional case pursuant to 35 U.S.C. § 285; pre-judgment and post-judgment interest; and any other damages, costs, fees, and interest allowed by the law.

D.I. 398-1 at 3.

Defendants served Plaintiffs with Interrogatory No. 15, which stated:

Describe the complete factual basis for damages and any other relief You seek in this case, including your contention as to the earliest date that damages may be recovered for infringement for each of the Accused Products and the complete set of facts justifying such date, what type(s) of damages You seek, and the methodology, formulas, assumptions, calculations, factors, and facts (e.g., revenues, royalty rates, lost profits, etc.) used in Your computation of damages or request for other relief, including, but not limited to, injunctive relief.

D.I. 398-2 at 6.

On February 26, 2021, Plaintiffs responded:

Chervon . . . states that Chervon is seeking lost profit damages for patent infringement under 35 U.S.C. § 284, enhanced damages for willful infringement, costs, and interest. More specifically, Chervon is seeking damages adequate to compensate for One World's infringement including lost profit damages (whether in the form of lost sales, price erosion, or other form) and/or damages that are not less than a reasonable royalty; damages for Chervon's costs, disbursements, and attorneys' fees; damages for an exceptional case pursuant to 35 U.S.C. § 285; pre-judgment and post-judgment interest; and any other damages, costs, fees, and interest allowed by the law.

D.I. 398-2 at 8.

On December 3, 2021, fact discovery closed. *See* D.I. 397 at 1. On January 19, 2022, Plaintiffs served their first supplemental response to Interrogatory No. 15. D.I. 398-3; *see* D.I. 398 at 1. On March 24, 2022, Plaintiffs served their second supplemental response to Interrogatory No. 15 by adding that "Chervon also seeks damages for lost platform sales." D.I. 398-4 at 62; D.I. 398 at 2. Subsequently, Plaintiffs served third and fourth supplemental responses to

3

Interrogatory No. 15. *See* D.I. 397 at 2. Plaintiffs' fourth supplemental response identified several financial documents that supported Plaintiffs' theories. *See* D.I. 397 at 2-3.

On March 24 and 28, 2022, Defendants deposed Plaintiffs' Rule 30(b)(6) witness on damages topics. *See* D.I. 398 at 2.

On September 15, 2022, Plaintiffs produced the financial documents referenced above. *See* D.I. 397 at 2; D.I. 398 at 2. These documents are "Plaintiffs' income statements for 2014-2021, and product-level data for Plaintiffs' non-lawnmower products for 2015-2018 and 2019-2022." D.I. 397 at 2 (citations omitted). The Court references these documents as the "Financial Documents."

On May 3 and 31, 2024, Plaintiffs served Defendants with Mr. McSorley's expert reports. *See* D.I. 397 at 1. In his reports, Mr. McSorley presents a damages theory that includes "price erosion" and "lost platform sales" damages. D.I. 397-3. In his report, Mr. McSorley relies on *inter alia* (1) accounting information that was provided by "discussion" with Mr. Wang, Chief Financial Officer of Chervon NA, and (2) the Financial Documents. D.I. 397-3.

On June 25, 2024, Defendants deposed Mr. McSorley. *See* D.I. 397 at 1.

**B.    One World's Motion to Strike (D.I. 396)**

On July 17, 2024, Defendants moved, pursuant to Rules 16(b)(4) and 37(c)(1) of the Federal Rules of Civil Procedure, to strike the Financial Documents and the references in Mr. McSorley's expert reports to: (A) Plaintiffs' "price erosion" damages theory; (B) Plaintiffs' "lost platform sales" damages theory; (C) information from Mr. McSorley's discussions with Mr. Wang, and (D) information from the Financial Documents. D.I. 396 (the "Motion to Strike"); D.I. 397. Defendants contended that Plaintiffs failed to disclose these items during discovery. Plaintiffs disagreed and opposed the Motion to Strike. *See* D.I. 398.

4

After carefully considering the parties' respective contentions, the Court found that "Plaintiffs did not timely disclose their lost platform sales damages theory as required by the Court's Scheduling Order." D.I. 472 at 14. After finding that Plaintiffs' lost platform theory of damages was untimely, the Court considered whether there was "good cause" for modifying the scheduling order under Federal Rule of Civil Procedure 16(b)(4). *See id.* The Court found that modifying the operative scheduling order was not warranted, because "Plaintiffs [did] not assert[] (let alone demonstrate[]) any diligence." *Id.* The Court also considered whether the *Pennypack* factors also supported excluding Plaintiffs' lost platform theory of damages as a discovery sanction. The Court found that two *Pennypack* factors weighed in favor of exclusion: the first factor (i.e., the prejudice or surprise in fact of the party against whom the evidence would have been presented) and the third factor (i.e., the extent to which the presentation of the evidence would disrupt the orderly and efficient trial of the case or other cases in the court). *See* D.I. 472 at 15-18. The Court found that two *Pennypack* factors were neutral: the second factor (i.e., the ability of the party against whom the evidence would have been presented to cure the prejudice) and the fourth factor (i.e., bad faith or willfulness in failing to comply with the court's order). *See* D.I. 472 at 19. The Court found that one *Pennypack* factor weighed against exclusion: the fifth factor (i.e., the importance of the excluded evidence). *Id.* at 15. Ultimately, the Court found that "the balance of the *Pennypack* factors support[s] exclusion." *Id.* at 15.

## II.   LEGAL STANDARDS

### A.   Motion to Strike

"The determination of whether to exclude evidence is committed to the discretion of the Court." *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 694 (D. Del. 2017); *see Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. 05-cv-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). "In [*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d

Cir. 1977)], [the Third Circuit] identified five factors to consider when determining whether . . . [to] preclud[e] evidence as a discovery sanction: (1) the prejudice or surprise in fact of the party against whom the evidence would have been presented, (2) the ability of that party to cure the prejudice, (3) the extent to which the presentation of the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, (4) bad faith or willfulness in failing to comply with the court's order, and (5) the importance of the excluded evidence." *LabMD Inc. v. Boback*, 47 F.4th 164, 189 (3d Cir. 2022); *see BearBox LLC v. Lancium LLC*, ___ F.4th ___, No. 2023-1922, 2025 WL 77755, at *8-9 (Fed. Cir. Jan. 13, 2025).

### B. Rule 16(b)(4) of the Federal Rules of Civil Procedure

"Under Rule 16, '[a] schedule may be modified only for good cause and with the judge's consent.'" *Pers. Audio, LLC v. Google LLC*, No. CV 17-1751-CFC, 2023 WL 3582681, at *2 (D. Del. May 22, 2023) (alteration in original) (quoting Fed. R. Civ. P. 16(b)(4)). "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Id.* (quoting *Synygy, Inc. v. ZS Assocs., Inc.*, No. CIV.A. 07-3536, 2015 WL 4578807 (E.D. Pa. July 30, 2015)). "If [a] party has not been diligent, the inquiry ends." *State Farm Mut. Auto. Ins. Co. v. Amazon.com, Inc.*, No. 22-cv-1447-CJB, 2024 WL 4145022, at *2 (D. Del. Sep. 11, 2024). "If the moving party can establish diligence, other considerations pertinent to the good cause inquiry come into play, including the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020) (collecting cases).

A party seeking leave to modify a court's scheduling order under Rule 16(b)(4) has the burden of showing "good cause." *Bos. Sci. Corp. v. Nevro Corp.*, No. 16-cv-1163-CFC, 2020 WL

5531561, at *1 (D. Del. Sep. 15, 2020). When a party fails to seek leave to modify a court's scheduling order and is subsequently subject to a motion to strike, that party, and not the proponent of the motion to strike, carries the same "good cause" burden. *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-cv-7025-RBK-JS, 2017 WL 5886004, at *13 (D.N.J. Nov. 29, 2017) ("The burden of proof to show good cause is plaintiffs' responsibility whether or not defendants focused on this argument in their [m]otion to [s]trike."); *Mora v. Target Corp.*, No. 07-cv-0719-MMA-WMC, 2010 WL 11684804, at *2 (S.D. Cal. Jan. 12, 2010) ("Rule 16(b)(4) provides that a scheduling order may be modified only for good cause and with the judge's consent. Although Defendant brings the [e]x [p]arte [m]otion to [s]trike, it is [p]laintiff's burden to demonstrate that good cause exists to modify Judge McCurine's scheduling order such that the motion to certify is no longer untimely.").

### C.  Rule 37(c)(1) of the Federal Rules of Civil Procedure

"Federal Rule of Civil Procedure 37(c)(1) provides that '[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.'" *TQ Delta, LLC v. 2Wire, Inc.*, No. CV 13-1835-RGA, 2019 WL 1863269, at *1 (D. Del. Apr. 25, 2019) (alterations in original).

"In determining whether a failure to disclose is harmless, courts consider such factors as: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." *Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 325 (D. Del. 2016) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).

The proponent of a motion to strike on the basis of Rule 37(c)(1) carries the burden. *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-cv-453-RGA, 2017 WL 11517421, at *4-5, at *15 (D. Del. Nov. 7, 2017).

### III.   DISCUSSION

As discussed below, the Court denies Chervon's Motion for three independent reasons: (A) granting Chervon leave to amend would be futile; (B) Chervon did not exercise sufficient diligence in seeking leave to amend; and (C) the *Pennypack* factors weigh against granting Chervon leave to amend.

### A.   Leave to Amend is Not Warranted Because it would be Futile

As noted above, Chervon seeks leave to amend its damages contentions for the purpose of introducing information relevant to its previously excluded lost platform sales theory. *See supra* Part I. One World opposes. One World responds that Chervon "[a]mending [its] disclosures now would be futile because Plaintiffs and their experts are precluded from raising the stricken lost platform sales theory at trial." D.I. 500 at 1.[4] "[L]eave to amend need not be granted if amendment would be futile." *LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 291 (3d Cir. 2021) (internal quotation marks omitted) (discussing amendments to pleadings); *see Fast 101 Pty Ltd. v. CitiGroup Inc.*, 834 F. App'x 591, 594 (Fed. Cir. 2020) (nonprecedential).[5] As discussed below, the Court agrees with One World that granting Chervon leave to amend would be futile.

---

[4] Chervon's reply letter (D.I. 506) does not address this contention. "As the [c]ourt noted in *Hardy*, '[i]n an adversary system, in which by its nature judges are heavily dependent on the lawyers to establish the facts upon which decision will be based, the failure to reply to an adversary's point can have serious consequences.'" *Progressive Sterilization, LLC v. Turbett Surgical LLC*, No. CV 19-627-CFC, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) (some alterations in original) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765 (7th Cir. 1994)).

[5] While *LaSpina* discussed futility in the context of amendments to pleadings, its reasoning also applies to amendments to contentions. Moreover, this Court has previously considered caselaw

8

Here, as One World notes, "the Court [] str[uck] Plaintiffs' lost platform sales damages theory." D.I. 472 at 15 n.3; *see* D.I. 500 at 2 ("Whether or not Plaintiffs are allowed to amend their disclosures, they and their experts are precluded from raising their stricken lost platform sales damages theory at trial."). "Plaintiff[s] *did not* move for reargument or reconsideration of that [Memorandum] Order [(D.I. 472)]" excluding their lost platform sales damages theory. *Levin v. Johnson & Johnson*, No. 16-CV-06631, 2022 WL 198501, at *1 (E.D.N.Y. Jan. 21, 2022).

Thus, the Court agrees with One World that it would be futile to permit Chervon to amend its damages contentions to introduce information that nevertheless would be barred by the Court's unchallenged January 14, 2025 Memorandum Order (D.I. 472). *See* D.I. 472 at 24 ¶ 1 ("The Court strikes . . . all references in Mr. McSorley's expert reports to (1) Plaintiffs' lost platform sales damages theory . . . . The parties and their experts shall not raise the content of any stricken material at any point during the trial.").

### B. Leave to Amend is Not Warranted Because of Chervon's Insufficient Due Diligence

Chervon contends that "[t]here is good cause to amend because [it] diligently moved to amend following the" Court's January 14, 2025 Memorandum Order (D.I. 472). D.I. 478 at 1; *see* D.I. 506 at 1. "'Good cause,' in th[e] context [of Rule 16(b)(4)], is understood to require a showing of diligence." *Ryanair DAC v. Booking Holdings Inc.*, No. CV 20-1191-WCB, 2023 WL 8650180, at *2 (D. Del. Dec. 8, 2023) (collecting cases). It is the "moving party's burden to show due diligence" under Rule 16(b)(4). *W. R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. CV 20-1098-GBW, 2023 WL 6200280, at *4 (D. Del. Sept. 22, 2023). As discussed below, Chervon did not timely satisfy its burden to show due diligence.

---

on amendments to pleadings when ruling on motions to amend contentions. *See Impossible Foods Inc. v. Motif Foodworks, Inc.*, No. CV 22-311-WCB, 2024 WL 3742229, at *2 (D. Del. July 26, 2024) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001)).

As One World notes, *see* D.I. 500 at 2, the Court has already considered whether there is good cause, under Rule 16(b)(4), for permitting Chervon to proceed with its lost platform sales damages theory. For the reasons set forth in the Court's January 14, 2025 Memorandum Order (D.I. 472), the Court found that Chervon "ha[s] not asserted (let alone demonstrated) [the] diligence" required for finding good cause under Rule 16(b)(4). D.I. 472 at 14. "At its core, what [Chervon's Motion] seeks is a do-over." *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014). Importantly, however, "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." *In re Anthanassious*, 418 F. App'x 91, 96 (3d Cir. 2011) (nonprecedential); *see Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel, LLC*, No. CV 15-50, 2021 WL 4751746, at *4 (W.D. Pa. Oct. 12, 2021).[6] Moreover, "Plaintiff[s] *did not* [even] move for reargument or reconsideration of that [Memorandum] Order [(D.I. 472)]." *Levin*, 2022 WL 198501, at *1.

Despite the Court's finding that Chervon failed to meet its burden of establishing sufficient diligence, Chervon's Motion seeks to relitigate that issue. *See* D.I. 478 at 1. One World contends that "Plaintiffs' motion to amend is an improper motion for reconsideration in disguise." D.I. 500 at 1. "To the extent that [Chervon's] Motion is a disguised as or alternatively a motion for reconsideration, reconsideration of the [Court's January 14, 2025 Memorandum] Order [((D.I. 472))] is [] inappropriate." *777 Partners LLC v. Pagnanelli*, No. 20-20172-CIV, 2022 WL 4594116, at *2 (S.D. Fla. Mar. 11, 2022). "Reconsideration is reserved for 'extraordinary circumstances.'" *In re TK Holdings Inc.*, No. 17-11375-BLS, 2024 WL 964205, at *7 (D. Del.

---

[6] "Discovery rulings are interlocutory in nature." *Glover v. F.D.I.C.*, 543 F. App'x 149, 151 (3d Cir. 2013) (nonprecedential) (quoting *Lusardi v. Xerox Corp.*, 747 F.2d 174 (3d Cir. 1984)).

10

Mar. 6, 2024). A motion for reconsideration "is [not] 'an appropriate vehicle to reargue issues that the court has already considered and decided.'"[7]

As One World notes, *see* D.I. 500 at 2, Chervon has not acknowledged the legal standard for reconsideration, let alone "demonstrate[d] one of the following: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'"[8] Thus, the Court agrees with One World that Chervon has not met its burden to demonstrate that reconsideration is warranted. *See Z & R Cab, LLC v. Philadelphia Parking Auth.*, 22 F. Supp. 3d 509, 513 (E.D. Pa. 2014) ("Reconsideration is not permitted to allow 'a second bite at the apple,' nor to reargue matters the trial court already resolved or relitigate points of disagreement between the [c]ourt and the moving party.") (citations omitted).

Alternatively, even if the Court were to consider Chervon's untimely new contentions,[9] the Court would still find that Chervon failed to meet its "burden to show due diligence" under Rule 16(b)(4). *W. R. Grace*, 2023 WL 6200280, at *4. "In determining whether a party has demonstrated good cause to amend its contentions, the key factor that courts have considered is

---

[7] *Adobe Inc. v. Marsh Funding LLC*, No. CV 24-861-GBW, 2024 WL 4751426, at *3 (D. Del. Nov. 12, 2024) (quoting *ACCO Brands USA LLC v. Performance Designed Prods. LLC*, No. CV 23-437-GBW, 2024 WL 3043311 (D. Del. June 18, 2024)).

[8] *Gen. Elec. Co. v. LPP Combustion, LLC*, No. CV 22-720-GBW, 2024 WL 3510307, at *1 (D. Del. July 22, 2024) (alteration in original) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999)).

[9] "The Third Circuit has regularly held that parties forfeit arguments not sufficiently argued at an appropriate earlier stage." *Trackthings LLC v. Netgear Inc.*, No. CV 22-981-RGA, 2023 WL 5993186, at *2 (D. Del. Sept. 15, 2023). Here, "the Court concludes that Plaintiff[s] clearly waived or forfeited [various] [contentions] by not making [them] in the[ir] briefing" in opposition to the Motion to Strike. *Satius Holding, Inc. v. Samsung Elecs. Co.*, No. CV 18-850-CJB, 2024 WL 5090284, at *4 (D. Del. Dec. 12, 2024).

whether that party has shown diligence both in discovering that an amendment was necessary and in moving to amend after that discovery." *Brit. Telecomms.*, 2020 WL 3047989, at *2.

Chervon's Motion turns on Chervon's assertion that the diligence clock started once the Court issued its January 14, 2025 Memorandum Order (D.I. 472). *See* D.I. 506 at 1. While the diligence clock in some scenarios may start once a court issues an order,[10] often "diligence should be measured from the time the information underlying the proposed amendments became available." *Barry v. Stryker Corp.*, No. CV 20-1787-SRF, 2023 WL 2733652, at *7 (D. Del. Mar. 20, 2023), *report and recommendation adopted*, No. CV 20-1787-RGA, 2023 WL 3224498 (D. Del. May 3, 2023); *see, e.g., Biodelivery*, 2020 WL 13802763, at *1 ("The Court agrees with Plaintiffs (and with the many courts who have concluded the same) that in general, when a party seeks to amend contentions in light of a district court's claim construction order, 'the moving party's diligence, without which there is no good cause, [should be] measured from the day the moving party received the proposed [claim] constructions, not the date of issuance of the [c]ourt's claim construction opinion.' This general rule makes good sense, as: (1) if a movant seeks amendment in light of a court's adoption of a construction that was previously proposed many months earlier; and (2) the movant was nevertheless always found to have acted diligently; then (3) this 'would mean that [the moving] party could wait until after the construction to take action, even though [in many cases] they were fully equipped to act sooner.' Such an outcome would promote and reward delay and inefficiency, not diligence.") (some alterations in original) (citations

---

[10] *See Biodelivery Scis. Int'l, Inc. v. Chemo Rsch., S.L.*, No. CV 19-444-CJB, 2020 WL 13802763, at *2 (D. Del. Feb. 20, 2020) ("Of course, there are scenarios where, even after a *Markman* order issues, a movant's attempt to amend contentions might still be found to be diligent. One such scenario could be if the district court adopted a construction that had not been proposed by any party—and that new construction was the basis for the subsequent motion to amend."); D.I. 394 at 2-3 (considering "whether a party was diligent in response to an intervening event (here, the March 6 Order)").

12

omitted); *Cytiva Sweden Ab v. Bio-Rad Lab'ys, Inc.*, No. 18-1899-CFC, 2021 WL 431508, at *1 (D. Del. Feb. 8, 2021) ("Courts presume a party lacks diligence if the party had knowledge of the facts supporting its proposed amendment before the deadline to amend."); *Gonzalez de Gomez v. Adams Cnty.*, No. 22-1199, 2023 WL 5163988, at *4 (10th Cir. Aug. 11, 2023) ("Gomez argues she showed good cause because it took the magistrate judge nearly six months to issue the recommendation on Wellpath's motion to dismiss, she moved for leave to amend only two weeks after that recommendation was filed, and no defendant opposed her motion. But . . . Gomez's arguments are lacking. She does not address the district court's reasons for finding she had not been *diligent* in seeking leave to amend. Significantly, the court determined the new allegations and the 25 new defendants she sought to add was information available to her at the time she filed her original complaint.") (nonprecedential) (footnote omitted).

Here, considering the subject matter of Chervon's proposed amendments, and considering when One World's Motion to Strike was filed, the Court finds that Chervon's diligence clock started well before the Court issued its January 14, 2025 Memorandum Order (D.I. 472). The Court agrees with One World that "Plaintiffs had multiple opportunities to move to amend throughout this litigation but failed to do so until the Court rightly struck their untimely damages theory." D.I. 500 at 3.

Thus, as Chervon's Motion contends that Chervon was diligent only as of January 14, 2025, the Court finds that Chervon has not met its "burden to show due diligence" under Rule 16(b)(4). *W. R. Grace*, 2023 WL 6200280, at *4.

C.  **Leave to Amend is Not Warranted Because the *Pennypack* Factors Weigh in Favor of Exclusion**

Chervon contends that "[d]enying leave to amend would result in the extreme sanction of exclusion." D.I. 478 at 2. As noted earlier, "[i]n [*Meyers v. Pennypack*], [the Third Circuit]

13

identified five factors to consider when determining whether . . . [to] preclud[e] evidence as a discovery sanction: (1) the prejudice or surprise in fact of the party against whom the evidence would have been presented, (2) the ability of that party to cure the prejudice, (3) the extent to which the presentation of the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, (4) bad faith or willfulness in failing to comply with the court's order, and (5) the importance of the excluded evidence." *LabMD*, 47 F.4th at 189; *see BearBox*, 2025 WL 77755, at *8-9. As discussed below, Chervon did not timely rebut One World's persuasive assertion that the *Pennypack* factors weigh in favor of excluding Plaintiffs' lost platform theory of damages as a discovery sanction.

As One World notes, *see* D.I. 500 at 3, the Court has already considered whether to exclude Chervon's lost platform sales damages theory as a discovery sanction. For the reasons set forth in the Court's January 14, 2025 Memorandum Order (D.I. 472), the Court found that "the balance of the *Pennypack* factors support[s] exclusion." D.I. 472 at 15; *see supra* Part I.B. Again, "[a]t its core, what [Chervon's Motion] seeks is a do-over." *Senju*, 746 F.3d at 1353. However, as noted earlier, "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." *In re Anthanassious*, 418 F. App'x at 96. Moreover, "Plaintiff[s] *did not* [even] move for reargument or reconsideration of that [Memorandum] Order [(D.I. 472)]." *Levin*, 2022 WL 198501, at *1.

Nevertheless, Chervon seeks to relitigate the issue of whether exclusion is warranted as a discovery sanction. *See* D.I. 478 at 2-3. "To the extent that [Chervon's] Motion is a disguised as or alternatively a motion for reconsideration, reconsideration of the [Court's January 14, 2025 Memorandum] Order [((D.I. 472))] is [] inappropriate." *Pagnanelli*, 2022 WL 4594116, at *2. Again, Chervon has not acknowledged the legal standard for reconsideration, let alone

"demonstrate[d] one of the following: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Gen. Elec.*, 2024 WL 3510307, at *1 (alteration in original) (quoting *Quinteros*, 176 F.3d 669). Thus, Chervon has not met its burden to demonstrate that reconsideration is warranted. *See Z & R Cab*, 22 F. Supp. 3d at 513 ("Reconsideration is not permitted to allow 'a second bite at the apple,' nor to reargue matters the trial court already resolved or relitigate points of disagreement between the [c]ourt and the moving party.") (citations omitted).

Alternatively, even if the Court were to consider Chervon's untimely new contentions,[11] the Court would still find that Chervon failed to rebut One World's persuasive assertion that the *Pennypack* factors support excluding Plaintiffs' lost platform theory of damages as a discovery sanction. As discussed below, Chervon's new contentions are not persuasive.

For example, Chervon's contention that "exclusion should be reserved for … willful deception or flagrant disregard of a court order," D.I. 478 at 4 (alteration in original), wrongly treats a general rule as an absolute rule.[12] The *Meyers v. Pennypack* opinion indicates that a court can exclude critical evidence even without a finding of bad intent: "[w]e have recently held that the exclusion of critical evidence is an 'extreme' sanction *not normally to be imposed absent a showing of* willful deception or 'flagrant disregard' of a court order by the proponent of the

---

[11] As noted earlier, "[t]he Third Circuit has regularly held that parties forfeit arguments not sufficiently argued at an appropriate earlier stage." *Trackthings*, 2023 WL 5993186, at *2. Here, "the Court concludes that Plaintiff[s] clearly waived or forfeited [various] [contentions] by not making [them] in the[ir] briefing" in opposition to One World's Motion to Strike." *Satius*, 2024 WL 5090284, at *4.

[12] *Cf. United States v. Ezeiruaku*, 936 F.2d 136, 142 (3d Cir. 1991) ("[T]he logical fallacy of *dicto simpliciter* (fallacy of accident) [] occurs when a general rule is applied to exceptional circumstances.") (internal quotation marks omitted).

evidence." *Pennypack*, 559 F.2d at 905 (emphasis added) (citation omitted); *see Acceleration Bay LLC v. Activision Blizzard Inc.*, No. CV 16-453-RGA, 2019 WL 4194060, at *7 (D. Del. Sept. 4, 2019) ("When a case involves complex litigation between sophisticated parties, courts are more willing, given a strong showing of prejudice, to exclude evidence even absent a showing under each *Pennypack* factor.").

Contrary to Chervon's proffered absolute rule, this Court has excluded evidence as a discovery sanction even when the fourth *Pennypack* factor (i.e., bad faith or willfulness in failing to comply with the court's order) does not weigh in favor of exclusion. *See, e.g., Cirba Inc. v. VMware, Inc.*, No. CV 19-742-GBW, 2023 WL 6799267, at *3-4 (D. Del. Mar. 30, 2023) ("As to the fourth *Pennypack* factor, . . . . this factor is, at best, neutral. . . . Accordingly, given the above analysis of the *Pennypack* factors, the Court finds that the untimely disclosure of . . . [the] [t]heories . . . should be stricken from Dr. Madisetti's expert reports."); *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 4346530, at *2 (D. Del. Sept. 12, 2019) ("The fourth factor weighs against exclusion. . . . Taken as a whole, the *Pennypack* factors weigh in favor of exclusion."); *AVM Techs., LLC v. Intel Corp.*, No. CV 10-610-RGA, 2013 WL 8422202, at *2 (D. Del. Mar. 29, 2013) ("[T]he fourth *Pennypack* factor weighs against excluding Tran's testimony. . . . [T]he Court concludes that Tran's proposed testimony set forth in AVM's Second Amended Proffer must be excluded.").

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Chervon's Motion.

\* \* \*

WHEREFORE, at Wilmington this 5th day of February 2025, **IT IS HEREBY ORDERED** that:

1. Chervon's Motion (D.I. 477) is **DENIED.**

16

2. The Court is issuing this Memorandum Order under seal, as portions of the parties' briefing were filed under seal. **IT IS FURTHER ORDERED** that, by no later than February 19, 2025, the parties shall file a proposed redacted version of this Memorandum Order, along with a motion supported by a declaration that contains a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). If the parties do not file a proposed redacted version and corresponding motion by the deadline, or if the Court determines the motion lacks a meritorious basis, this Memorandum Order will be unsealed in whole or in part.

_____<br>
GREGORY B. WILLIAMS<br>
UNITED STATES DISTRICT JUDGE