## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHERVON (HK) LTD., CHERVON NORTH AMERICA, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 19-1293-GBW |
| ONE WORLD TECHNOLOGIES, INC., TECHTRONIC INDUSTRIES CO. LTD., HOMELITE CONSUMER PRODUCTS, INC., | |
| Defendants. | |

## MEMORANDUM ORDER

Pending before the Court are the following motions *in limine*:[1]

1. Plaintiffs' MIL #1: Defendants Should Be Precluded from Presenting a Prior Art Invalidity Defense for the '806, '26686, and '588 Patents Based on Collateral and IPR Estoppel ("Plaintiffs' MIL #1") (D.I. 494-1),[2] which has been fully briefed (D.I. 494-2);

2. Plaintiffs' MIL #2: Defendants and Defendants' Damages Expert Should Be Precluded from Introducing Evidence, Argument, and Opinion Regarding Chervon's Damages Expert Substitution [Unopposed] ("Plaintiffs' MIL #2") (D.I. 494-1);

---

[1] The Plaintiffs are Chervon (HK) Ltd. and Chervon North America, Inc. ("Plaintiffs" or "Chervon"). The Defendants are One World Technologies, Inc., Techtronic Industries Co. Ltd., and Homelite Consumer Products, Inc. ("Defendants" or "One World").

[2] The single quotation marks face the nonconventional direction in the original. *Cf. Arr-Maz Prods., L.P. v. Shilling Const. Co.*, No. 12-cv-0319-CVE-FHM, 2012 WL 5251191, at *1 n.1 (N.D. Okla. Oct. 24, 2012) ("Patent attorneys are fond of using a backwards apostrophe when omitting all but the final three numbers of a patent."). The "Asserted Patents" include U.S. Patent Nos. 9,060,463 ("the '463 patent"); 9,596,806 ("the '806 patent"); 9,826,686 ("the '686 patent" or "the '86686 patent"); 10,070,588 ("the '588 patent"); and 10,485,176 ("the '176 patent"). D.I. 493 ¶ 1.

3. Plaintiffs' MIL #3: The Court Should Preclude Defendants' Technical Expert from Presenting New and Undisclosed Expert Opinions at Trial ("Plaintiffs' MIL #3") (D.I. 494-9), which has been fully briefed (D.I. 494-2; D.I. 494-9);

4. Defendants' Motion *in Limine* No. 1: Exclude Evidence of Inter Partes Review Proceedings and Decisions by this Court During the Litigation ("Defendants' MIL #1") (D.I. 494-3), which has been fully briefed (D.I. 494-7);

5. Defendants' Motion *in Limine* No. 2: Exclude Evidence About the Purported "Dangers" of Battery-Powered Lawnmowers and Similar Inflammatory Evidence ("Defendants' MIL #2") (D.I. 494-3), which has been fully briefed (D.I. 494-7); and

6. Defendants' Motion *in Limine* No. 3: Exclude Hearsay and Speculative Alleged Communications about Plaintiffs' Patents Involving the Home Depot ("Defendants' MIL #3") (D.I. 494-3), which is unopposed (D.I. 502).

For the following reasons, the Court: (1) grants-in-part and denies-in-part Plaintiffs' MIL #1; (2) grants Plaintiffs' MIL #2; (3) grants-in-part and denies-in-part Plaintiffs' MIL #3; (4) grants-in-part and denies-in-part Defendants' MIL #1; (5) denies Defendants' MIL #2; and (6) grants Defendants' MIL #3.

## I.    LEGAL STANDARDS

A motion *in limine* is designed to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Motions *in limine* allow the court "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "A motion in limine is appropriate for 'evidentiary submissions that clearly ought not be presented . . . because they clearly would be inadmissible for any purpose.'" *Evolved Wireless, LLC v. Apple Inc.*, No. 15-cv-542-JFB-SRF, 2019 WL 1100471, at *1 (D. Del. Mar. 7, 2019) (citation omitted).

Federal Rule of Evidence 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II.    DISCUSSION

The Court's Scheduling Order provides that each party may file three motions *in limine*. D.I. 329 ¶ 8. On December 23, 2024, the parties exchanged their motions *in limine*; on January 14, 2025, the parties exchanged their responses. D.I. 493 ¶ 91. On January 24, 2025, Plaintiffs served Defendants with three "revised" motions *in limine*. *See* D.I. 493 ¶ 91. The first section of this discussion addresses whether the Court will consider these "revised" motions *in limine*. The remaining sections rule on each motion.

**A.    The Court Considers Plaintiffs' First and Second "Revised" Motions *in Limine*; the Court Does Not Consider Plaintiffs' Third "Revised" Motion *in Limine*[3]**

Defendants do not contend that the Court should not consider the "revised" versions of Plaintiffs' first and second motions *in limine* (*see* D.I. 493 at 25), which is perhaps unsurprising. Plaintiffs' "revised" MIL #1 contains only minor non-substantive edits compared to the "original" version, and Plaintiffs "revised" MIL #2 contains no edits. Since Defendants do not contend that

---

[3] Exhibit 14 to the parties' Proposed Pretrial Order comprises the "revised" versions of Plaintiffs' motions *in limine*. D.I. 494-1 Ex. 14. Exhibit 18(a) to the parties' Proposed Pretrial Order comprises a redline comparing the "revised" versions against the "original" versions. D.I. 494-9 Ex. 18(a). Exhibit 18(b) to the parties' Proposed Pretrial Order is Plaintiffs' "original" MIL #3. D.I. 494-9 Ex. 18(b). The "original" versions of Plaintiffs' first and second motions *in limine* do not appear to be in the record.

3

the Court should not consider the "revised" versions of Plaintiffs' first and second motions *in limine*, since Plaintiffs' "original" first and second motions *in limine* appear to not be in the record, and since the differences (insofar as they exist) between the "revised" and "original" versions are not outcome determinative, the Court will consider the "revised" versions of Plaintiffs' first and second motions *in limine* and will cite to them herein for simplicity.[4]

On the other hand, Defendants contend "that Plaintiffs' 'revised' MIL No. 3 should not be considered, as it is untimely and violates the Court's Scheduling Order and L.R. § 16.3(d)(1)&(2)." D.I. 493 at 25. The Court's Scheduling Order provides that the parties' motions *in limine* "shall be set forth in the proposed pretrial order" instead of "separately filed." D.I. 329 ¶ 8. Notably, the Court's Scheduling Order does not specify a date by which the parties must serve *each other* with their competing motions *in limine*.

Local Rule § 16.3(d)(1) provides:

Unless otherwise ordered or agreed to by the parties and approved by the Court:

> (1) The plaintiff shall provide a draft pretrial order to all other parties no less than 30 days before the pretrial order is to be filed with the Court. The draft shall include proposed language for the sections of the pretrial order jointly submitted by all parties, *as well as the sections relating to the plaintiff's case. . . .*

L.R. § 16.3(d)(1) (emphasis added).

Here, the Court's Scheduling Order required the parties to file the draft pretrial order by January 28, 2025. D.I. 395. Thirty days before January 28, 2025 was Sunday, December 29, 2024. Counting "backward," Plaintiffs were required to provide Defendants with a draft pretrial order by

---

[4] Defendants did not submit a "revised" opposition to Plaintiffs' "revised" MIL #1, and instead maintain their "original" opposition at D.I. 494-2 (which begins at PageID 33868). Likewise, Plaintiffs did not submit a "revised" reply in support of their MIL #1, and maintain their "original" reply, also included in D.I. 494-2 (at PageID 34155). The Court considers each.

December 27, 2024. *See* Fed. R. Civ. P. 6(a)(1)-(4) (regarding the rules on computing deadlines). Since the Local Rules required the draft pretrial order to include "the sections relating to [Plaintiffs'] case," and since this Court's Scheduling Order required the motions *in limine* to be "set forth in the [draft] pretrial order" (D.I. 329 ¶ 8), the Local Rules and the Court's Scheduling Order operated in tandem to require Plaintiffs to tender their motions *in limine* to Defendants, as part of the draft pretrial order, by December 27, 2024. Since Plaintiffs submitted their "revised" MIL #3 on January 24, 2025 (D.I. 493 at 25), Plaintiffs' "revised" MIL #3 was untimely.

Of course, untimely submissions invite rescue by Rule 16 of the Federal Rules of Civil Procedure. Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause is present when the schedule cannot be met despite the moving party's diligence." *In re Chanbond, LLC*, No. 15-cv-842-RGA, 2019 U.S. Dist. LEXIS 81590, at *5 (D. Del. May 14, 2019) (citation omitted). "If that party has not been diligent, the inquiry ends." *State Farm Mut. Auto. Ins. Co. v. Amazon.com, Inc.*, No. 22-cv-1447-CJB, 2024 U.S. Dist. LEXIS 163432, at *4 (D. Del. Sep. 11, 2024). A party seeking leave to modify a court's scheduling order under Rule 16(b)(4) has the burden of showing "good cause." *Bos. Sci. Corp. v. Nevro Corp.*, No. 16-cv-1163-CFC, 2020 U.S. Dist. LEXIS 168563, at *4 (D. Del. Sep. 15, 2020).

Here, however, Plaintiffs fail to request modification of the Court's Scheduling Order. Even if Plaintiffs had requested modification, the Court would be surprised if Plaintiffs could demonstrate that the Court's Scheduling Order could not be met despite Plaintiffs' diligence. Absent diligence, the Rule 16 "inquiry [would] end[]" and the Court would not consider Plaintiffs' untimely MIL #3. *See State Farm*, 2024 U.S. Dist. LEXIS 163432, at *4.

Aside from the Court's Scheduling Order and the Local Rules, the parties appear to have stipulated to exchange their motions *in limine* and responses thereto on December 23, 2024, and January 14, 2025, respectively. *See* D.I. 493 at 25; *see also* D.I. 494-2 at PageID 33874 (asserting that the parties stipulated to an "agreed upon date for Chervon to serve its opening brief in support of its motions"). Such stipulation, notably, comports with the interplay between the Court's Scheduling Order and the Local Rules discussed above. Plaintiffs' "revised" MIL #3, being served on January 24, 2025, appears to violate the Parties' stipulation.

In addition, the U.S. Supreme Court has held "that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). These inherent powers include the authority and discretion to deny motions that were not filed or served in a timely manner. In serving their "revised" MIL #3 on January 24, 2025, only four days prior to the deadline for the parties to file their draft pretrial order with the Court, Plaintiffs failed to afford Defendants reasonable time to oppose the revised motion.

Accordingly, the Court's Scheduling Order, the Federal Rules of Civil Procedure, the parties' apparent stipulation, and this Court's inherent power to manage its docket, compel the exclusion of Plaintiffs' "revised" MIL #3. The Court will thus only entertain the arguments presented in Plaintiffs' "original" MIL #3 and will likewise only entertain the arguments presented in Defendants' "original" opposition to Plaintiffs' MIL #3.[5]

---

[5] Defendants also submitted what they referred to as a "conditional" opposition to Plaintiffs' MIL #3 in the event the Court elected to consider Plaintiffs' "revised" MIL #3. D.I. 493 at 25; D.I. 494-9 Ex. 18(e). Since the Court is not considering Plaintiffs' "revised" MIL #3, the Court need not consider Defendants' "conditional" opposition. It is unclear to the Court whether Plaintiffs submitted a reply in support of their "revised" MIL #3. Regardless, the Court cites to the version at D.I. 494-2 at PageID 34156.

6

Below the Court discusses each of the parties' motions *in limine*.

**B.      The Court Grants-in-Part and Denies-in-Part Plaintiffs' MIL #1**

Plaintiffs' MIL #1 regards the '806, '26686, and '588 patents (the "IPR Patents"), over which Defendants initiated IPR proceedings.  *See* D.I. 494-1 Ex. 14 at 1; *see also* D.I. 494-9 Ex. 18(a) at 1.[6] According to Defendants, "[t]he PTAB found the claims of the IPR Patents to be valid and patentable in final written decisions ('FWD')."  *See* D.I. 494-1 Ex. 14 at 1.  "The Federal Circuit affirmed the FWDs."  *See* D.I. 494-1 Ex. 14 at 1.

On July 26, 2024, Plaintiffs filed and ranked four summary judgment motions per the Court's summary judgment motions ranking procedures.  In support of their third ranked summary judgment motion, Plaintiffs contended that, in light of the PTAB's decision and Federal Circuit affirmance, "Defendants are barred from arguing that the Asserted Claims of the IPR Patents are invalid as obvious pursuant to the doctrines of IPR estoppel and collateral estoppel."  D.I. 410 Ex. 14 at 26 (opening brief); *see* D.I. 204 (motion).

The Court denied Plaintiffs' first ranked summary judgment motion, and thus denied Plaintiffs' remaining summary judgment motions (including the third ranked summary judgment motion) per the Court's summary judgment motions ranking procedures.  D.I. 470 Ex. 14 at 21 (citing *Lindis Biotech, GmbH v. Amgen Inc.*, No. 22-cv-35-GBW, 2024 WL 4869579, at *4 (D. Del. Nov. 22, 2024)).

---

[6] As discussed *supra* § II(A), Plaintiffs submitted an "original" and "revised" version of their first motion *in limine*.  The "original" version appears to have included the '86686 patent (D.I. 494-9 Ex. 18(a) at 1), but the "revised" version does not (D.I. 494-1 Ex. 14 at 1).  As explained *supra* § II(A), Defendants do not contend that Plaintiffs' "revised" MIL #1 is untimely, and in any event, the differences between the "original" and "revised" versions of Plaintiffs' MIL #1 are not outcome determinative, and thus, the Court cites the "revised" version herein.

In their MIL #1, Plaintiffs contend that Defendants are estopped, pursuant to collateral and IPR estoppel, "from presenting evidence or argument at trial that the asserted claims of the IPR Patents are invalid as obvious." D.I. 494-1 Ex. 14 at 1.

Defendants contend that the Court should deny Plaintiffs' MIL #1 "for the same reason" the Court denied Plaintiffs' third ranked summary judgment motion and because Plaintiffs' MIL #1 is actually "an untimely and improper motion for summary judgment." D.I. 494-2 Ex. 15 at 1. Defendants are correct. Plaintiffs are "not suggesting that [Defendants'] evidence of [invalidity] is not relevant to [Defendants'] claim of [invalidity], but that [Defendants'] claim of [invalidity] is [estopped] and thus should be dismissed." *Datacore Software Corp. v. Scale Computing, Inc.*, No. 22-cv-535-GBW, 2024 WL 3823001, at *2 (D. Del. Aug. 14, 2024). "This is an improper use of a motion *in limine*," and thus the Court denies Plaintiffs' MIL #1 in this respect. *Id.*

In the alternative, Plaintiffs contend that, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, "the Court should preclude Defendants and their expert from introducing, using, or displaying to the jury any physical products because Defendants' infringement contentions and expert report/charts rely exclusively on printed manuals." D.I. 494-1 Ex. 14 at 1; *see id.* at 3 (same) (citing Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 37(c)(1)).[7]

---

[7] "It appears that [Plaintiffs' first] motion *in limine* is actually two [or more] motions combined into one, thereby exceeding the limit imposed in this case of [three] such motions per side. What [Plaintiffs] characterize[] as [their first] motion combines [for example] one theory for excluding [evidence and argument on the basis of estoppel] and a separate theory for excluding [the use of physical products at trial on the basis of Rules 26 and 37 of the Federal Rules of Civil Procedure]." *Joy Glob., Inc. v. Wis. Dep't of Workforce Dev.*, 423 B.R. 445, 450 n.1 (D. Del. 2010). Thus, for the purpose of the Court's Scheduling Order, the Court could count this as multiple motions *in limine*. *See Natera Inc. v. ArcherDx, Inc.*, No. 20-cv-125-GBW, D.I. 585 at 1-2 (D. Del. May 3, 2023). However, "[e]xtending [Plaintiffs] the benefit of the doubt, the Court will reach the merits of [each]." *Joy Glob.*, 423 B.R. at 450 n.1.

8

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides that expert reports "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; . . . (iii) any exhibits that will be used to . . . support them . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i), (iii). The "exhibits" contemplated by Rule 26 include physical exhibits.

In turn, Rule 37(c)(1) of the Federal Rules of Civil Procedure provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Mr. Reed's expert reports appear to fail to contain any physical product "exhibits that will be used to . . . support" Mr. Reed's expert reports. *See* Fed. R. Civ. P. 26(a)(2)(B)(i), (iii). As such, Defendants are "not allowed to" admit such evidence at trial. *See* Fed. R. Civ. P. 37(c)(1); *see also Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2022 U.S. Dist. LEXIS 250378, at *42 (N.D. Ill. Mar. 30, 2022) (applying Rule 37(c)(1) in the context of physical samples). However, "demonstrative exhibits for trial" do "not fall within the bounds of Rule 26(a)(2)'s expert disclosure requirements." *Bieber v. Nace*, No. 10-cv-0718, 2011 U.S. Dist. LEXIS 144415, at *2 (M.D. Pa. Dec. 15, 2011). As such, the Court does not grant Plaintiffs' request to preclude Defendants from using physical products as demonstratives.

Plaintiffs also contend: "Of course, if the Court permits Defendants to relitigate the obviousness of the IPR Patents at trial (it should not), then the Court, in fairness, should permit Chervon to present any and all evidence from the IPRs at trial, including the FWDs and the Federal Circuit's affirmance of the FWDs." D.I. 494-1 Ex. 14 at 2-3. The Court will not grant Plaintiffs *carte blanche* to introduce any and all evidence from the IPR proceeding. *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (explaining that a "court

may deny a motion in limine when it lacks the necessary specificity"). Instead, Plaintiffs' may introduce evidence from the IPR proceedings in accordance with the Court's ruling on Defendants' MIL #1, *infra* § II(E).

**C.    The Court Grants Plaintiffs' MIL #2**

In their second motion *in limine*, Plaintiffs contend that the "Court should preclude Defendants and their damages expert from introducing at trial any evidence, argument, and opinion regarding Chervon's substitution of its damages expert and that Chervon's damages expert concurred with Chervon's former damages expert's conclusions after he independently evaluated the evidence because such evidence, argument, and opinion is irrelevant, and its probative value, if any, is substantially outweighed by the high risk of unfair prejudice, confusing the issues, and misleading the jury under Fed. R. Evid. 402 and 403." D.I. 494-9 Ex. 18(a) at 5.

Plaintiffs' MIL #2 is granted as unopposed. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, No. 01-cv-504-SLR, 2003 WL 1905636, at *1 (D. Del. Apr. 14, 2003).

**D.    The Court Grants-in-Part and Denies-in-Part Plaintiffs' MIL #3**

In their third motion *in limine*, Plaintiffs suggest that Defendants' expert "Mr. Reed *may* offer opinions at trial" regarding "claim construction, non-infringement, and invalidity . . . that are beyond the scope of Mr. Reed's reports and that are reserved for the Court." D.I. 494-9 Ex. 18(b) at 7 (emphasis added). Plaintiffs add: "Any such attempts are unjustified, prejudicial to Chervon, and the Court should not allow them." D.I. 494-9 Ex. 18(b) at 7.

In response, Defendants "agree that expert witnesses should not be permitted to testify beyond the scope of the opinions expressed in their expert reports," but generally assert that the opinions of Mr. Reed of which Plaintiffs complain "fall squarely within the scope of [Mr. Reed's] expert reports." D.I. 494-9 Ex. 18(c) at 1. Below, the Court addresses Plaintiffs' specific contentions.

**Plaintiffs' First Contention**: By way of background, claim 11 of the '686 patent recites, in relevant part, "wherein the second control device comprises at least one of a switch connected to the power supply circuit and a signal source device for sending a *control signal* to control the motor." '686 patent, claim 11 (emphasis added).  Mr. Reed avers that Plaintiffs' expert, Mr. Smith is incorrect in asserting "that the component labeled 'side switch' sends . . . a control signal to control the motor."  D.I. 494-2 Ex. A ¶ 171.  Mr. Reed continues:

> Mr. Smith's report provides no data, such as a voltage trace, showing any control signal from the "side switch" to any other component of the Crossbar Accused Product.  Mr. Smith's report also does not explain how "opening of the circuit sends a control signal"; opening the "side switch" would leave the electric lead of the "side switch" on the side of the Led Controller at a floating voltage, and nothing in Mr. Smith's report informs how a floating voltage constitutes a control signal.  *I believe a floating voltage cannot be considered a control signal at least because it has no discernable or reliable voltage.*  To say that a lack of a connection from the "side switch" to the Led Controller produces a control signal is tantamount to saying the "side switch" sends a signal to the Led Controller before the lawnmower is even assembled.  Mr. Smith's report simply fails to identify any control signal from the "side switch" that meets the claim limitation.

D.I. 494-2 Ex. A ¶ 171.

Plaintiffs contend that Mr. Reed belatedly construed "the terms 'control device' and 'control signal,' including that a 'control signal' must have a 'discernible or reliable voltage.'" D.I. 494-9 Ex. 18(b) at 8.  As a preliminary matter, Plaintiffs fail to explain how Defendants belatedly construed the term "control device" and thus forfeit this argument.  *See ECB USA, Inc. v. Savencia, S.A.*, No. 19-cv-731-RGA, 2020 WL 5369076, at *4 (D. Del. Sept. 8, 2020) ("As a general prudential rule, courts only decide issues that are fairly and fully presented.  Therefore, cursory arguments not fully developed by the parties are waived."); *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 441 (D. Del. 2023) ("[A]rguments . . . not squarely argued[] are considered [forfeited].") (some alterations in original).

11

Moreover, "[t]he court is not required to resolve any issue involving the scope of the claims as to which the parties could disagree." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. 19-cv-622-WCB, D.I. 119 at 48 (D. Del. Mar. 20, 2020). The Federal Circuit instructs that after "the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact." *Id.* (quoting *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998)). Likewise, the Federal Circuit explains that "a sound claim construction need not always purge every shred of ambiguity" as the "resolution of some line-drawing problems . . . is properly left to the trier of fact." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).

Here, the remaining "line-drawing problem[]" of whether the accused product satisfies the limitation of "a signal source device for sending a control signal to control the motor" (*see* '686 patent, claim 11) is appropriate for resolution by the trier of fact. *See Honeywell Int'l, Inc. v. Nikon Corp.*, 642 F. Supp. 2d 322, 328 (D. Del. 2009). Therefore, the Court denies the first contention in Plaintiffs MIL #3.

**Plaintiffs' Second Contention**: As background, claim 13 of the '176 patent recites, in relevant part, that "the second control device *make* the first control device *unable* to start the electrical motor" and "the third control device *make* the first control device *unable* to start the electrical motor." '176 patent, claim 13 (emphases added). Mr. Reed asserts that a "person of skill in the art would understand that this 'make ... unable' limitation requires some action by the second and third control devices that affirmatively acts upon the first control device." D.I. 425 ¶ 8 (citation omitted).

Plaintiffs contend that Defendants belatedly construed "that the second and third control devices must 'affirmatively act upon the first control device.'" D.I. 494-9 Ex. 18(b) at 8 (quoting D.I. 441 ¶ 8). In contrast, Defendants contend: "Mr. Reed opined the accused products do not practice the 'make unable' limitations in the asserted claims based on the plain and ordinary meaning of the term, because the accused products do not actively make the control circuit unable to start or allow operation." D.I. 494-9 Ex. 18(c) at 1. Defendants add: "Mr. Smith disagreed with Mr. Reed as a factual matter, not as a matter of claim construction." D.I. 494-9 Ex. 18(c) at 1.

Plaintiffs are correct. Defendants and their expert engage in inappropriate claim construction and thus are precluded from presenting this argument at trial. *See Int'l Bus. Machines Corp. v. Zynga Inc.*, No. 22-cv-590-GBW, 2024 WL 3993290, at *2 (D. Del. Aug. 29, 2024) ("[T]he Court will not permit testimony from either expert regarding terms not construed in this case."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1304 (Fed. Cir. 2009) (declining to consider a party's claim construction arguments after the party "failed to clearly explain what result would occur if this court adopted [the party's] proposed claim constructions" and "gave this court little guidance and cited no record support regarding why a modified claim construction would affect the infringement judgment"). Thus, the Court grants the second contention in Plaintiffs' MIL #3.

**Plaintiffs' Third Contention**: As background, the Court construed the term "safety shift structure" in claims 1, 3, 5, 12-13, 15 of the '463 patent as a "receiving groove or slot whose end wall displaces the trigger assembly." D.I. 110 at 1. In his report, Mr. Reed opined:

> Mr. Smith's claim chart provides the below annotated photograph which clearly shows he is accusing a continuous, arcuate or circular-shaped indentation as constituting the claimed "safety shift structure." However, neither Mr. Smith's report nor its claim chart shows the "end wall" required in the Court's construction. To emphasize the point, it must be the "end wall" of the "receiving groove or slot" that displaces the trigger assembly, and in addition to failing to even try to

> differentiate the "end wall" from any other part of the alleged "receiving groove or slot," neither Mr. Smith's report nor its claim chart show that it is the "end wall" (as opposed to another part of the alleged "receiving groove or slot") that displaces the trigger assembly. . . . Accordingly, it is my opinion that no accused product has been shown to infringe any claim of the '463 [p]atent.

D.I. 494-2 Ex. A ¶¶ 140-41. Plaintiffs contend that Defendants' expert Mr. Reed belatedly construed that the term "safety shift structure" cannot be a "continuous, arcuate or circular-shaped indentation," and that Defendants do not explain why such an indentation "does not have an 'end wall.'" D.I. 494-9 Ex. 18(b) at 8.

However, as Defendants observe, "Mr. Reed opined that the accused products do not meet the Court's construction because they lack an 'end wall' as a matter of fact." D.I. 494-9 Ex. 18(c) at 1 (citation omitted); *see PPG Indus.*, 156 F.3d at 1355 ("Rather, after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."). As to the description of the indentation, Mr. Reed was merely describing the physical properties of the picture with the purported safety shift structure. Such description does not constitute improper claim construction. Thus, the Court denies the third contention in Plaintiffs' MIL #3.

**Plaintiffs' Fourth-Seventh Contentions**: Plaintiffs contend that the "Court should also preclude Mr. Reed from offering the below non-infringement opinions because they are not included in Mr. Reed's expert reports":

- The alleged non-infringement of Claim 1 of the '588 patent other than with respect to the "a control device for sending a control signal to cause the motor to be activated by the operation assembly when one of the plurality of telescopic members is caused to be moved to a predetermined position relative to another one of the plurality of telescopic members or to prevent the motor from being activated by the operation assembly when the one of the plurality of telescopic members is caused to be moved away from the predetermined position relative to the another one of the plurality of telescopic members" limitation. (D.I. 409 ¶ 47.)

- The alleged non-infringement of Claim 1 of the '86686 patent other than with respect to the "unlocks" limitations. (D.I. 409 ¶ 52.)

- The alleged non-infringement of Claim 1 of the '176 patent other than with respect to the "a power supply circuit for enabling the electric power source to provide power to the motor" and "a control device for allowing the motor to be activated by the operation assembly when one of the telescopic members is moved to a predetermined position relative to another one of the telescopic members" limitations. (D.I. 409 ¶ 58.)

- The alleged non-infringement of Claim 12 [sic] the '463 patent other than with respect to the "safety shift structure" limitation. (D.I. 409 ¶ 65.)

D.I. 494-9 Ex. 18(b) at 8.

In response, Defendants contend that "Plaintiffs do not identify the opinions they are asking the Court to exclude and do not attach Mr. Reed's rebuttal report so the Court can assess what is fairly disclosed. The Court should deny Plaintiffs' motion on this basis alone." D.I. 494-9 Ex. 18(c) at 2. In any event, Defendants contend that "contrary to Plaintiffs' unsupported arguments, Mr. Reed timely disclosed the following opinions":

- For the '588 and '176 patents, Mr. Reed opined that Plaintiffs' expert, Fred Smith, failed to demonstrate representativeness. Ex. A at ¶¶ 115-127. Thus, Mr. Reed should be permitted to opine that Plaintiffs failed to meet their burden to prove that the so-called "Levered Accused Products" infringe those patents because the RY40LM03 analyzed by Mr. Smith is not representative of the other accused products.

- For claim 1 of the '588 patent, Mr. Reed presents several noninfringement opinions in his rebuttal report related to this limitation, and he should be permitted to render those opinions at trial. Ex. A at ¶¶ 154, 156-77, 180-83, 198, 202, 206-15, 248-52.

- For claim 1 of the '86686 patent, Mr. Reed opines that the accused products do not "unlock" a control device(s), and he also opines that the accused products do not practice the "control system" limitation. Ex. A at ¶¶ 198, 201, 206-09, 240-45.

- For claim 1 of the '176 patent, Mr. Reed opines that the accused products lack a "power supply circuit" and that they lack a "control device for allowing the motor to be activated." Ex. A at ¶¶ 184-89, 194-98, 204, 206-12, 262-66, 271.

D.I. 494-9 Ex. 18(c) at 2.

There are at least three concerning issues with Plaintiffs' fourth-seventh contentions, including that they (1) fail to specify what Plaintiffs wish to exclude, (2) exceed the page limits imposed by the operative scheduling order, and (3) incorporate excessive prior briefing by reference.

*First*, Plaintiffs have "not specified particular [testimony they] seek[] to exclude." *See Evans v. John Crane, Inc.*, No. 15-cv-681-MN, 2019 U.S. Dist. LEXIS 184048, at *8 (D. Del. Oct. 24, 2019). "Consequently, the Court [may deny Plaintiffs'] motion *in limine* on this topic without prejudice to renew the motion with respect to specific [testimony] during the course of the trial." *See id.*; *see also Nextplat Corp. v. Seifert*, No. 21-cv-22436, 2024 U.S. Dist. LEXIS 169186, at *10 (S.D. Fla. Sep. 19, 2024) ("We agree with Nextplat that *in limine* relief is not appropriate. For one, Mr. Seifert has not sought to exclude any specific piece(s) of evidence, but rather requests a broad exclusion that will apparently encompass any evidence that could be used to argue in favor of limiting liability. Such relief is not appropriate—especially because it is impractical to forecast what evidence and argument may be used regarding liability as opposed to damages.").

Moreover, the Court "cannot reasonably be expected to engage in [the] onerous process to assess" the majority of limitations of the asserted claim of each asserted patent, and cross reference each of those limitations with the entirety of Mr. Reed's expert reports (which Plaintiffs fail to attach), to determine whether Mr. Reed addressed those limitations, especially where Plaintiffs, as the party seeking relief, punted such effort. *See McInnis v. Hexcel Corp.*, No. 22-cv-01087-MN-SRF, 2024 U.S. Dist. LEXIS 137697, at *20 (D. Del. Aug. 2, 2024). Indeed, "Judges are not like pigs, hunting for truffles buried in briefs" (let alone incorporated briefs). *See id.* (citation omitted).

*Second*, Plaintiffs' MIL #3 exceeds the court-imposed page limits for the parties' motions *in limine*. The operative scheduling order provides that each party may file three motions *in limine* that "may be supported by a maximum of three (3) pages of argument." D.I. 329 ¶ 8. In their third motion *in limine*, Plaintiffs incorporate by reference nearly two additional pages from another filing to support their first-third contentions. The Court considered the filings (and arguments therein) incorporated into Plaintiffs' first-third contentions. Those incorporated pages, together with the pages already expended, exceed the court-imposed three-page limit for Plaintiffs' MIL #3. Therefore, each of Plaintiffs' contentions, following their third, violate the three-page limit.

"Accordingly, the Court will exercise its discretion and give no weight to the text beyond" Plaintiffs' third contention. *Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. 21-cv-1365-GBW, 2025 U.S. Dist. LEXIS 8307, at *2 n.2 (D. Del. Jan. 15, 2025); *see Pharmacy Corp. of Am./Askari Consol. Litig.*, No. 16-cv-1123-RGA, 2021 WL 4033238, at *1 (D. Del. Sept. 3, 2021); *Cephas v. Scarborough*, No. 18-cv-851-RGA, 2022 WL 606328, at *3 (D. Del. Feb. 8, 2022); *see also Wise v. Biowish Techs., Inc.*, No. 18-cv-676-RGA, 2019 WL 4344273, at *18 (D. Del. Sept. 12, 2019) ("Defendants cannot evade the page limits set forth in Del. Local Rule 7.1.3[(a)](4) by incorporating by reference arguments made in prior briefs.").

*Third*, Plaintiffs' contentions regarding the non-infringement opinions of Mr. Reed continue to incorporate by reference Plaintiffs' prior filings. "It is improper for [Plaintiffs] to expect the Court to track down the earlier filings" and "divine" Plaintiffs' argument. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-cv-151-LPS, 2024 U.S. Dist. LEXIS 96986, at *12 (D. Del. May 31, 2024). The Court does not suggest that parties cannot cite prior briefs; rather, parties may not eschew sufficient presentation of their arguments in the pending brief, and instead, rely entirely on previous briefs to develop their arguments.

For the foregoing reasons, the Court denies the fourth, fifth, sixth and seventh contentions in Plaintiffs' MIL #3. "However, the Court instructs that both sides[' experts] are precluded from presenting evidence and arguments" outside the scope of their reports. *See 3G Licensing, S.A. v. HTC Corp.*, No. 17-cv-83-GBW, 2023 U.S. Dist. LEXIS 177873, at \*5 (D. Del. Oct. 3, 2023). "At trial, [and in accordance with Judge Williams' Trial Procedures,] the parties shall make timely objections" as necessary and at "that time, the Court will determine whether to overrule or sustain the objection." *See id.*

**Plaintiffs' Eighth-Ninth Contentions**: Plaintiffs request the Court to "preclude Defendants and Mr. Reed from introducing, arguing, opining, using, or displaying to the jury any physical products to support Defendants' invalidity positions and Mr. Reed's opinions." D.I. 494-9 Ex. 18(b) at 9. Plaintiffs also request the Court, by footnote, to "preclude Defendants from presenting a prior art invalidity defense regarding the asserted claims of the four IPR Patents based on collateral and IPR estoppel." D.I. 494-9 Ex. 18(b) at 9 n.4 (citing Plaintiffs' first motion *in limine*). However, Plaintiffs' requested relief, on both accounts, is identical to the relief requested in Plaintiffs' first motion *in limine*. The Court does not reconsider Plaintiffs' requests here.[8]

**E.**    **The Court Grants-in-Part and Denies-in-Part Defendants' MIL #1**

In their first motion *in limine*, Defendants contend that "[t]he Court should preclude reference before the jury of any prior decisions by the Court in this litigation and by the Patent Trial and Appeal Board ('PTAB') in the prior *inter partes* review ('IPR') and post-grant review ('PGR') proceedings." D.I. 494-3 at PageID 34160. As discussed below, the Court grants-in-part and denies-in-part Defendants first motion *in limine*.

---

[8] Moreover, "[a]rguments in footnotes are forfeited." *Novartis Pharms. Corp. v. MSN Pharms. Inc.*, No. 20-md-2930-RGA, 2024 U.S. Dist. LEXIS 204351, at \*11 (D. Del. Nov. 8, 2024) (citing *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023)).

As to Defendants' request that "the Court [] preclude Plaintiffs from referencing prior decisions by this Court, including discovery-related rulings," D.I. 494-3 at PageID 34160, Plaintiffs respond that they "do not intend to reference such decisions." D.I. 494-7 at PageID 34467; *see id.* at PageID 34474 ("Finally, as noted in Plaintiffs' footnote 3, Plaintiffs do not intend to reference any previous decisions of this Court. The parties are in agreement regarding this portion of Defendants' MIL No. 1. Defendants therefore respectfully request that the Court grant this motion in its entirety."). Thus, the Court will grant Defendants' first motion *in limine* to the extent that it seeks to preclude both parties from raising "discovery-related rulings" with the jury. The Court will not, however, fully grant Defendants' request. The request is so broadly worded that it arguably would preclude the parties from referencing the Court's claim construction rulings in this case. The Court will not wholly preclude the parties from referencing the Court's claim construction rulings. *Cf. AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("[C]laim construction becomes the basis of the jury instructions."); *FullView, Inc. v. Polycom, Inc.*, No. 23-cv-1201, 2024 WL 1843686, at *12 (Fed. Cir. Apr. 29, 2024) (Dyk, J., dissenting in part and concurring in part) (nonprecedential) ("Under our cases, once there is a claim construction, it is the jury's job to apply the construction to the accused device.").

As to Defendants' request that "[t]he Court [] preclude reference before the jury of any prior . . . post-grant review [] proceedings," D.I. 494-3 at PageID 34160,[9] Plaintiffs have not

---

[9] "The AIA [] provides several mechanisms that allow the Patent Office to reconsider a patent it incorrectly granted: (1) *inter partes* review under 35 U.S.C. §§ 311–319, (2) post-grant review under 35 U.S.C. §§ 321–329, and (3) *ex parte* reexamination under 35 U.S.C. §§ 301–305." *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1381-82 (Fed. Cir. 2023). "[T]he 'post-grant review' provision permits 'a person who is not the owner of a patent' to petition for review and cancellation of a patent on any ground of patentability." *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 624 (2019) (quoting 35 U.S.C. § 321); *see Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1345-46 (Fed. Cir. 2020).

provided a colorable argument in opposition to this request. "When a responding party fails to defend against an issue which is the subject of a motion, courts consistently construe the failure to respond as an abandonment of the issue or a concession that the moving party is correct." *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-990-SRF, 2017 WL 2467059, at *2 (D. Del. June 7, 2017). Thus, the Court grants Defendants' first motion *in limine* to the extent it seeks to preclude the parties from raising post-grant review proceedings before the jury. *See GeoComply Sols. Inc. v. Xpoint Servs. LLC*, No. 22-cv-1273-WCB, 2023 WL 1927393, at *20 (D. Del. Feb. 10, 2023) ("In its opposition to Xpoint's motion to dismiss, GeoComply did not respond to Xpoint's argument regarding claim 10. GeoComply's failure to respond to that argument constitutes a concession that Xpoint does not infringe claim 10 of the '805 patent, at least under the infringement theory of Count II."), *aff'd*, No. 23-cv-1578, 2024 WL 4717268 (Fed. Cir. Nov. 8, 2024).

The parties dispute whether "[t]he Court should preclude reference before the jury of any prior decisions . . . by the Patent Trial and Appeal Board [] in the prior *inter partes* review . . . proceedings." D.I. 494-3 at PageID 34160. According to Defendants, in this action, they "intend to raise prior art invalidity grounds that include some of the art that was before the PTAB, but the grounds to be raised with the jury are distinct and rely on different evidence and expert opinion than was presented to the PTAB." D.I. 494-3 at PageID 34162. Defendants contend that "[t]he Court should preclude Plaintiffs from referencing the[] proceedings and from entering into evidence the underlying IPR and PGR petitions (PTX-0391 through PTX-0394; PTX-0415; and PTX-0880 through PTX-0883), the declarations and deposition of E. Smith Reed supporting each petition (for purposes other than impeachment) (PTX-0425; PTX- 0455; PTX-0458; PTX-0459; and PTX-0859 through PTX-0868), the PTAB's Institution Decisions or FWDs (PTX-0385

through PTX-0387; PTX-0396 through PTX-0400; PTX-0430; and PTX-0431), and appellate briefing related to the FWDs (PTX-0394 and PTX-0395)." D.I. 494-3 at PageID 34161.

As discussed below, the Court grants Defendants' first motion *in limine* to the extent it seeks to preclude the parties from raising IPR petitions that were not instituted. As to relevancy, the Court finds that the "failure to institute an IPR has little or no probative value." *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 15-cv-152-RGA, 2018 WL 6629705, at *1 (D. Del. Oct. 12, 2018). "Under Rule 403, 'th[is] [C]ourt may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Egan v. Delaware River Port Auth.*, 851 F.3d 263, 275 (3d Cir. 2017). The Court is mindful of the Federal Circuit's instruction that "district courts should [] exercise caution when admitting evidence of a denial of institution because it may be confusing to the jury and prejudicial." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1351 (Fed. Cir. 2019).

Here, with respect to raising IPR petitions that were not instituted, the Court finds that "[t]o the extent there is any probative value, it is substantially outweighed by the risk of confusing the issues, misleading the jury, and undue delay for time spent providing appropriate context." *Bio-Rad*, 2018 WL 6629705, at *1; *see, e.g., Chamberlain*, 935 F.3d at 1351 ("[D]enials of institution provide limited probative value that is likely to be outweighed by the prejudice to the opposing party, and limiting instructions to the jury do not necessarily cure the prejudice."); *United States v. Gilead Scis., Inc.*, 722 F. Supp. 3d 458, 477 n.6 (D. Del. 2024) ("Rule 403 'strongly favors exclusion' because a non-institution 'is not a final decision on validity, is based on different legal standards, and has no estoppel effect.'"); *MiiCs & Partners Am. Inc. v. Toshiba Corp.*, No. 14-cv-

803-RGA, 2017 WL 11573565, at *1 (D. Del. Oct. 12, 2017) ("[T]he PTAB decision [denying to institute proceedings] has at most minimal probative value, and, to put it in context, would require a significant detour from the main issues in the case, and add another level of complexity to a case that does not need any more complexity. Thus, its probative value is substantially outweighed by the dangers of its unfair prejudicial value, risk of jury confusion, and waste of time."); *Acceleron, LLC v. Dell, Inc.*, No. 12-cv-4123-TCB, 2020 WL 10353408, at *3 (N.D. Ga. Aug. 27, 2020) ("Acceleron . . . . asserts that the PTAB's decision not to institute IPR on claim 24 is highly relevant to Dell's willful infringement of the '021 [p]atent. Though admission of this evidence would be relevant, . . . admission would be unduly prejudicial and confusing to the jury."). However, "[t]he Court will reevaluate . . . [this decision] should [One World] argue or attempt to prove that the PTO has never considered the [] prior art, which [One World] asserts as invalidating prior art and which was also prior art on which [any of] its [non-instituted] IPR petition[s] was based." *Andover Healthcare, Inc. v. 3M Co.*, No. 13-cv-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016).

As discussed below, and with the provisos listed below, the Court grants-in-part Defendants' request that the Court preclude the parties from raising concluded IPR proceedings that were instituted. "After the Board issues a final written decision in an inter partes review . . . and the time for appeal has expired or any appeal has terminated, the [Patent] Office will issue and publish a certificate . . . confirming any claim of the patent determined to be patentable." 37 C.F.R. § 42.80; *see* 35 U.S.C. 318(b). "It is well settled that inter partes review and post grant review, once concluded, become part of the patent's prosecution history." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18-cv-05290-CM, 2024 WL 68418, at *1 (S.D.N.Y. Jan. 5, 2024).

Some courts hold that a "jury [should] not be told anything about the existence of [] IPRs." *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-cv-284-LPS, 2019 WL

77046, at \*1 (D. Del. Jan. 2, 2019); *see, e.g., Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-cv-453-RGA, D.I. 604 at 3 (D. Del. Oct. 23, 2018) ("Plaintiff may not reference the IPR petitions or the PTAB proceedings."); *Nox Med. Ehf v. Natus Neurology Inc.*, No. 15-cv-709-RGA, 2018 WL 6629704, at \*1 (D. Del. Apr. 12, 2018) ("[T]o the extent Defendant states that it can use the institution of the IPR, or the pendency of IPR proceeding, for any purpose, including lack of willfulness, such evidence would be excluded on the same rationale. The parties are instructed that the jury is not to be told about the IPR in any fashion."); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-cv-1296-JPS, 2017 WL 4570787, at \*6 (E.D. Wis. Oct. 12, 2017) ("Because of the effect of IPR estoppel, the IPRs necessarily covered different prior art than will be used at trial. Whether that prior art was sufficient to invalidate the patents, as a general proposition, is irrelevant to the specific prior art at issue here. For that reason, admitting evidence of the IPRs is likely to mislead the jury into believing that because the patents-in-suit have survived many attacks, they must be valid against the present attacks.").

However, sometimes courts are more willing to permit jurors to hear about IPR challenges, at least when defendants present the jury with prior art that is identical, or at least substantially similar, to prior art raised during IPR challenges. *See, e.g., Int'l Bus. Machines Corp. v. Zynga Inc.*, No. 22-cv-590-GBW, 2024 WL 3993290, at \*3 (D. Del. Aug. 29, 2024) ("[I]f Zynga opens the door by introducing prior art raised before the Patent Office, IBM may respond by introducing evidence related to the post-grant proceedings."); *Willis Elec. Co. v. Polygroup Ltd.*, No. 15-cv-3443-JNE, 2024 WL 118443, at \*10 (D. Minn. Jan. 9, 2024) ("The Court agrees with Willis Electric that there is meaningful overlap with the prior art asserted in the IPR proceedings and what Polygroup relies on now for its invalidity defense. Specifically, Polygroup continues to assert the GKI tree references and Otto patent in combination, which closely tracks what was considered

23

and rejected by the PTAB.  This provides a legally meaningful basis for the jury to weigh against Polygroup's invalidity case.").

As One World notes, this Court has previously declined to preclude a party from raising certain IPR materials before jurors.  *See* D.I. 494-3 at PageID 34466 (citing *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, No. 17-cv-1353-LPS, 2020 WL 954938, at *2 (D. Del. Feb. 27, 2020)).  In the *Pac. Biosciences* case, the plaintiff sought to use an IPR petition and expert declaration for the purpose of impeaching an expert and "demonstrat[ing] [the defendants'] inconsistent positions with respect to key factual issues such as the state of the art as of the priority date of the asserted patents."  No. 17-cv-1353-LPS, D.I. 546-1 at PageID 28163.  The defendants, in the *Pac. Biosciences* case, filed a motion *in limine* seeking to preclude the plaintiff from "present[ing] arguments and evidence from . . . an inter partes review [] proceeding."  No. 17-cv-1353-LPS, D.I. 546-1 at PageID 28155 (emphasis removed); *see* 2020 WL 954938, at *2.  The *Pac. Biosciences* Court denied the motion *in limine* and held that the "IPR declaration and [defendants'] IPR petition may properly be used to impeach [defendants'] witnesses, provided that the parties reference them as being related to 'another matter,' without disclosing the nature, details, or results of the IPR or any other proceeding."  2020 WL 954938, at *2; *see id.* ("The probative value of such evidence is not nearly outweighed by the risk of unfair prejudice or jury confusion or any other concern of Rule 403.").

Given the complexity of this case, and the parties' respective contentions,[10] "[t]he Court [does] not [wish to] burden the jury with confusing information as to the purpose behind IPR

---

[10] "With regard to willful infringement, [the Court] [is] skeptical that evidence of IPRs filed after this litigation began is particularly probative of willfulness.  To the extent that evidence of the IPRs might be relevant to that issue, [the Court] find[s] that the introduction of evidence regarding the IPRs will result in [unfair] prejudice to [One World] that substantially outweighs any minimal

proceedings, the different standards at these proceedings, the role and purpose of the PTAB, or the role of the proceedings in patent law." *Bos. Sci. Corp. v. Cook Med. LLC*, No. 17-cv-03448-JRS, 2023 WL 2411277, at *1 (S.D. Ind. Feb. 2, 2023). Thus, with respect to raising IPR petitions that were instituted, and are now concluded, the Court adopts the following approach:

> [One World] will not reference the IPRs to support its invalidity defenses and [Chervon] will not reference the IPRs to rebut invalidity. However, evidence that has been developed in an IPR . . . – including testimonial as well as documentary evidence – may be used at trial, provided that it is done without referencing the IPR . . . (beyond, if necessary, a generic reference to "another matter") and subject to the Federal Rules of Evidence and the Court's procedures. With these protections, the probative value of the evidence is not substantially outweighed by the risk of jury confusion, unfair prejudice, or waste of time.

*Siemens Mobility*, 2019 WL 77046, at *1. "If [Defendants] open[] the door, however, by stating or implying that references were not previously considered when they were, [Plaintiffs] may introduce IPR evidence to rebut that statement or implication." *Contour IP Holding, LLC*, No. 17-cv-04738-WHO, 2021 WL 75666, at *8 (N.D. Cal. Jan. 8, 2021).

## F.    The Court Denies Defendants' MIL #2

One World's second motion *in limine* requests that the Court preclude Chervon from presenting certain documents and eliciting testimony that One World claims would "inflame the jury." D.I. 494-3 at PageID 34186. In particular, One World seeks to exclude two categories of evidence under Federal Rule of Evidence 403, claiming that "the risk of unfair prejudice far outweighs any probative value." *Id.* at PageID 34188. The first category is testimony about the purported "dangers" of battery powered lawnmowers. *Id.* at PageID 34186. Such testimony, One World claims, has no other purpose than to inflame the jury. *Id.* In support of its contention, One World cites multiple cases where the court excluded evidence of the dangers of the product at

---

probative value that the evidence may have." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-cv-452-WCB, 2022 WL 2800911, at *2 (D. Del. June 27, 2022).

issue. *Id.* at PageID 34186-87 (citing *Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-cv-679-RGA, 2019 WL 9171206, at *1 (D. Del. Mar. 13, 2019); *Greatbatch Ltd. v. AVX Corp.*, No. 13-cv-723-LPS, 2017 WL 3085055, at *3 (D. Del. July 20, 2017)); *see* D.I. 494-7 at PageID 34478 (citing *ICU Med., Inc. v. Rymed Techs., Inc.*, 752 F. Supp. 2d 486, 496 (D. Del. 2010)).

Chervon opposes this argument on the grounds that it cannot present its infringement and damages cases without discussing the safety features of the parties' products that are expressly recited in the asserted claims. D.I. 494-7 at PageID 34468. Chervon attempts to distinguish One World's cited cases by claiming they do not address evidence relating to claimed safety features, only evidence about the defendants' products causing injury and death. *Id.* In addition, Chervon cites *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. 09-cv-80-LPS, 2014 WL 4246579, at *1 (D. Del. Aug. 27, 2014), where the Court allowed evidence regarding FDA clearance because it was relevant to the issue of whether the product was an acceptable alternative, which was relevant to damages. D.I. 494-7 at PageID 34468.

The Court agrees with Chervon. Here, unlike the cases that One World cites, the probative value of the safety features in the lawnmowers at issue are not "substantially outweighed by a danger of" prejudice. *See* Fed. R. Evid. 403.

Second, One World contends that multiple One World internal documents must not be admitted because they would also inflame the jury. D.I. 494-3 at PageID 34187-88. These documents use terms like "eradicate" and "physical abuse" in reference to Chervon or use images of crosshairs over Plaintiffs' logo, all done allegedly in jest according to One World. *Id.* at PageID 34187. In One World's view, "[n]one of these documents have anything to do with the accused features of lawnmower handles and nothing to do with infringement, invalidity, patent damages, or any other pertinent issue;" rather, they reflect that Chervon and One World are fierce

26

competitors in the outdoor product space generally, not with respect to the accused products. *Id.* Additionally, One World seeks to preclude the introduction of deposition testimony from a Home Depot representative, Jennifer Morrow, showing a business "attack" plan that uses the image of crosshairs over Chervon's logo referenced above. *Id.*

Chervon retorts that this evidence is highly relevant to its willful infringement and damages claims. D.I. 494-7 at PageID 34469. In particular, Chervon claims this evidence shows One World's intent to directly compete with Chervon, to use One World's infringing mowers to convert sales of Chervon's patented products, and to copy Chervon's products. *Id.* Furthermore, Chervon wishes to use this evidence to counter One World's claim that the parties do not directly compete with each other over the accused products. *Id.* at PageID 34469-70.

The Court finds Chervon's position persuasive. For a piece of evidence to be excluded under Rule 403, it is not just enough to be prejudicial because "all evidence adverse to a party is prejudicial." *Finch v. Hercules Inc.*, No. 92-cv-251-MMS, 1995 WL 785100, at *13 (D. Del. Dec. 22, 1995). Instead, "the prejudice should rise to a level tantamount to being unfair." *Id.* Here, there is nothing unfairly prejudicial about allowing Chervon to present evidence of direct competition for its infringement and damages claims. As such, this second category of evidence is not precluded under Rule 403.

The Court notes that its ruling on this motion is limited to One World's high-level request to exclude all evidence relating to the dangers of battery powered lawnmowers and One World's targeted language and imagery towards Chervon. If more detailed objections arise regarding a piece of evidence implicated here, the Court may consider it later. "At trial, the parties shall make timely objections" as necessary and in accordance with Judge Williams' Trial Procedures, and at

"that time, the Court will determine whether to overrule or sustain the objection." *See 3G Licensing, S.A.*, 2023 U.S. Dist. LEXIS 177873, at *4-5.

For the aforementioned reasons, the Court denies Defendants' second motion *in limine*.

### G.    The Court Grants Defendants' MIL #3

In their third motion *in limine*, Defendants seek to "preclude Plaintiffs from eliciting testimony about two communications that allegedly occurred in 2017 involving one or more employees of The Home Depot." D.I. 494-7 at PageID 34417. Plaintiffs do not oppose. *See* D.I. 502 at 1. Thus, the Court grants Defendants' third motion *in limine*. *See Arthrocare*, 2003 WL 1905636, at *1.

### III.    CONCLUSION

Motions in *limine* are often straightforward opportunities for the parties to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *See Bradley*, 913 F.2d 1064, 1069. Here, however, Plaintiffs' motions *in limine* were mired in procedural improprieties, including but not limited to the untimely serving of "revised" motions *in limine* four days prior to the deadline for the parties' draft pretrial order, derogation from the page limits imposed by the operative scheduling order, and the filing of multiple motions *in limine* disguised as a single motion (also in violation of the operative scheduling order).

In conclusion, for the reasons described in this Memorandum Order, the Court grants-in-part and denies-in-part Plaintiffs' MIL #1, grants Plaintiffs' MIL #2, grants-in-part and denies-in-part Plaintiffs' MIL #3, grants-in-part and denies-in-part Defendants' MIL #1, denies Defendants' MIL #2, and grants Defendants' MIL #3.

\* \* \*

WHEREFORE, at Wilmington this 5th day of February 2025, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' MIL #1: Defendants Should Be Precluded from Presenting a Prior Art Invalidity Defense for the '806, '26686, and '588 Patents Based on Collateral and IPR Estoppel (D.I. 494-1) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2. Plaintiffs' MIL #2: Defendants and Defendants' Damages Expert Should Be Precluded from Introducing Evidence, Argument, and Opinion Regarding Chervon's Damages Expert Substitution [Unopposed] (D.I. 494-1) is **GRANTED**;

3. Plaintiffs' MIL #3: The Court Should Preclude Defendants' Technical Expert from Presenting New and Undisclosed Expert Opinions at Trial (D.I. 494-9) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

4. Defendants' Motion *in Limine* No. 1: Exclude Evidence of Inter Partes Review Proceedings and Decisions by this Court During the Litigation (D.I. 494-3) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

5. Defendants' Motion *in Limine* No. 2: Exclude Evidence About the Purported "Dangers" Of Battery-Powered Lawnmowers and Similar Inflammatory Evidence (D.I. 494-3) is **DENIED**; and

6. Defendants' Motion *in Limine* No. 3: Exclude Hearsay And Speculative Alleged Communications About Plaintiffs' Patents Involving The Home Depot (D.I. 494-7) is **GRANTED**.

7. Because this Memorandum Order is filed under seal, the parties shall meet and confer and, no later than thirty (30) days after entry of this Memorandum Order, file a proposed redacted version of the Memorandum Order, along with a motion supported by a

declaration that contains a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019).  If the parties do not file a proposed redacted version and corresponding motion by the deadline, or if the Court determines the motion lacks a meritorious basis, this Memorandum Order will be unsealed in whole or in part.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE