IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHERVON (HK) LTD., CHERVON NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ONE WORLD TECHNOLOGIES, INC., TECHTRONIC INDUSTRIES CO. LTD., HOMELITE CONSUMER PRODUCTS, INC., <br><br> Defendants. | C.A. No. 19-1293-GBW |

## MEMORANDUM ORDER

Before the Court is an *O2 Micro* dispute over three terms: (1) "designated position," which is recited in claim 8 of U.S. Patent No. 9,596,806 ("the '806 patent") and claim 11 of U.S. Patent No. 9,826,686 ("the '686 patent"); (2) "designated rotating position," which is recited in claim 13 of U.S. Patent No. 10,485,176 ("the '176 patent"); and (3) "predetermined position," which is recited in claim 1 of U.S. Patent No. 10,070,588 ("the '588 patent") (collectively the "Disputed Terms"). Both sides agree that the Disputed Terms share the same meaning and that the Court should use the plain and ordinary meaning, but they disagree as to what that meaning is. *See* D.I. 539; D.I. 541.[1] Plaintiffs Chervon (HK) Ltd. ("Chervon HK") and Chervon North America, Inc. ("Chervon NA") (collectively, "Chervon" or "Plaintiffs") contend that the plain and ordinary meaning of the Disputed Terms is "a position where the motor can start." D.I. 541 at 1. Defendants One World Technologies, Inc., Techtronic Industries Co. Ltd., and Homelite Consumer Products,

---

[1] In light of this, the Court will treat claim 8 of the '806 patent as representative when construing the Disputed Terms.

Inc. (collectively, "One World" or "Defendants") assert that the plain and ordinary meaning is as follows: "Generally a working position of the handle, the position of the handle in Figure 1:



." D.I. 539 at 1.

The parties did not identify or bring up any dispute about these claim terms during claim construction. *See* D.I. 109.[2] At trial, Plaintiffs' expert, Fred Smith, testified to the meaning of these terms. *See* D.I. 539 at 2. When testifying about alleged infringement of claim 13 of the '176 patent, Mr. Smith testified "the designated rotating position is this position where the switch is on." 2.10.25 Trial Tr. at 234:4-5; *see also id.* at 232:21-234:9. He also testified that "designated positions" mean "any time that switch is actuated, that is a designated position." 2.11.2025 Trial Tr. at 44:6-10; *id.* at 45:11-12 ("whether the switch is switched or not"); 46:25-47:3 ("[W]hen that switch on the bottom is switched, that's the designated position. When it's off of that switch, it's away from the designated position"). Mr. Smith acknowledged that there is a "dispute" about the meaning of the terms. 2.11.2025 Trial Tr. at 46:17-47:3.

---

[2] "While it is preferable for claim construction disputes to be fully vetted and resolved at the time of formal claim construction proceedings, the [C]ourt has a duty to resolve fundamental disputes about the meaning of claims even when the disputes arise after claim construction proceedings are concluded." *Prolitec Inc. v. ScentAir Techs., LLC*, No. CV 20-984-WCB, 2023 WL 8697973, at *5 (D. Del. Dec. 13, 2023) (collecting cases).

The parties' dispute as to the scope of the Disputed Terms requires the Court to construe the Disputed Terms "to the extent necessary to resolve the controversy." *Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1341 (Fed. Cir. 2024); *see Int'l Bus. Machines Corp. v. Zynga Inc.*, No. CV 22-590-GBW, D.I. 538 at 7 (D. Del. Aug. 29, 2024) ("Given the materiality of the term to IBM's infringement allegations, it is now necessary for the Court to engage in additional claim construction to resolve the identified dispute."). The Court has reviewed the parties' supplemental briefing (D.I. 539; D.I. 541) and construes the Disputed Terms below with a summary of the parties' contentions.

| Claim Term | Chervon's Proposed Construction | One World's Proposed Construction | Court's Construction |
|---|---|---|---|
| "Designated position," "Designated rotating position," and "Predetermined position" | A position where the motor can start | Generally a working position of the handle, the position of the handle in Figure 1: | A position where the motor can start |

Claim 8 of the '806 patent is dependent on claim 6,[3] which is reproduced below:

6. A mower, comprising:
    a main body at least having a mowing blade and a motor for driving the mowing blade;
    a handle rotatably connected to the main body and at least having one operation assembly for being operated by a user to control the motor when the handle is located in a predetermined position; and

---

[3] "A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d); *see Maxell, Ltd. v. Amperex Tech. Ltd.*, 94 F.4th 1369, 1373-74 (Fed. Cir. 2024).

3

> a control system for preventing the motor from being controlled by the operation assembly and halting the motor when the handle is located out of the predetermined position, the control system comprising:
> a first control device configured to be controlled by the operation assembly, and
> a second control device disposed at a position proximate to a shaft of the handle and configured to be controlled according to the rotating position of the handle wherein when the handle rotates to the designated position relative to the main body, the second control device unlocks the first control device so that the first control device allows starting of the motor, and when the handle rotates to a position other than the designated position relative to the main body, the second control device locks the first control device so that the first control device is not allowed to start the motor, and
> wherein the second control device comprises at least one of a switch connected to the power supply circuit or a signal source device for sending a control signal to the power supply circuit.

Defendants cite the portion of "claim 6/8 of the '806 patent" below to contend that their construction is correct:

> when the handle rotates to the <u>designated position</u> relative to the main body, the second control device unlocks the first control device so that the first control device allows starting of the motor, and when the handle rotates to a position <u>other than the designated position</u> relative to the main body, the second control device locks the first control device so that the first control device is not allowed to start the motor.

D.I. 539 at 1 (emphases in original) (citation omitted). Defendants also cite the parts of the specification which state "when the handle [] does not rotate to <u>the designated position (generally a working position of the handle [], the position of the handle in FIG. 1)</u>, . . . the motor is locked and cannot be started" and "when the handle does not rotate to the designated position, the user has not gotten ready for mowing." *Id.* at 2 (emphasis in original) (citation omitted).

Plaintiffs disagree with Defendants' interpretation of the claim and specification. In Plaintiffs' view, the claims "specify that when the handle is in the 'designated' or 'predetermined' position, the motor can start" and vice versa. D.I. 541 at 1. Similarly, Plaintiffs contend that the

4

specification supports the construction of "a position where the motor can start" because the specification, *inter alia*, states that the "designated" or "predetermined" position is on where a contact switch SW1 is pressed. *Id.* (citing '806 patent at 6:54- 65, FIG. 2, FIG. 7; '686 patent at 6:58-7:2; '588 patent at 6:59-7:3; '176 patent at 7:15-26). Finally, Plaintiffs state that the prosecution history supports their position because the "Applicant confirmed that the 'designated position' is one where the motor can start." D.I. 541 at 2.

Furthermore, Plaintiffs claim that Defendants' proposed construction violates canons of claim construction. *Id.* at 3. First, Plaintiffs assert that Defendants' construction did not use the plain and ordinary meaning of the disputed terms because they copied and pasted their claim construction from the specification. *Id.* Second, Plaintiffs quote the Federal Circuit as holding that "as a general rule claims of a patent are not limited to the preferred embodiment ... or to the examples listed within the patent specification." *Id.* (quoting *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000) (internal citations omitted)). By copying and pasting a figure from the specification, Plaintiffs contend that Defendants' construction violates this rule.

Plaintiffs' construction is more sound. First, "[i]t is well established that 'it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.'" *Memory Techs., LLC v. PNY Techs., Inc.*, No. 23-353-WCB, D.I. 59 at 3 (D. Del. Aug. 21, 2024) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)); *see VLSI Tech. LLC v. Intel Corp.*, 53 F.4th 646, 652 (Fed. Cir. 2022) (quoting *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998)) ("As we have repeatedly cautioned, claims should not be limited 'to preferred embodiments or

specific examples in the specification.'"). By incorporating Figure 1, Defendants improperly limited its construction to a preferred embodiment in the specification.

Second, the plain language of the "second control device disposed at" limitation ('806 patent, 9:20-32) defines the Disputed Terms as the position where the motor can start. This is consistent with the specification, which provides that the "motor is locked and cannot be started" when the handle is not in the "designated position." *See* D.I. 539 at 2 (quoting the specification); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." (citation and quotation marks omitted)). Asserting that the "designated position" is "*generally* a working position of the handle" (*see* D.I. 539 at 2 (emphasis added)), as Defendants trumpet, does not mean that the "designated position" is *always* a working position of the handle for the purpose of claim scope as the specification indicates. *See Dow Chem. Co.*, 226 F.3d at 1341-42 (confirming that "claims of a patent are not limited to the preferred embodiment … or to the examples listed within the patent specification").

Third, "patent coverage is not necessarily limited to inventions that look like the ones in the figures." *MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007); *see, e.g., Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) ("These drawings are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves."); *Lowe v. ShieldMark, Inc.*, No. 2021-2164, 2022 WL 636100, at *6 (Fed. Cir. Mar. 4, 2022) (nonprecedential) ("ShieldMark is correct that every figure in the specification depicts tape with shoulders. Importantly, however, that does not necessarily require us to narrowly limit the claimed invention to those figures."); *Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 960 (Fed. Cir. 2017) ("[A] claim is not limited to inventions looking like those in the

drawings."). Here, Defendants' "argument rests on importing [a] limitation from an embodiment in the figures, which is improper." *Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1377 (Fed. Cir. 2022).

Plaintiffs' proposed construction, however, does comport with the rules of claim construction, and it is consistent with the claim and specification. For the foregoing reasons, the Court construes the terms "designated position," "designated rotating position," and "predetermined position" to mean "a position where the motor can start."

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Date: February 14, 2025